Stephen F. Crew, OSB No. 78171, stevec@rccb.com
Charles E. Corrigan, OSB No. 76108, chuckc@rccb.com
RAMIS, CREW, CORRIGAN & BACHRACH
1727 N.W. Hoyt Street
Portland, Oregon 97209
Telephone: (503) 222-4402
Telecopy: (503) 243-2944

R. Stephen Berry, D.C. Bar No. 234815, sberry@berry-leftwich.com
BERRY & LEFTWICH
1717 Pennsylvania Ave., N.W., Suite 450
Washington, DC  20006-1809
Telephone: (202) 296-3020
Telecopy: (202) 296-3038
(Other Counsel Listed on Signature Page)
        Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **MORELOCK ENTERPRISES, INC.** | Civil No. 3:04-cv-00583-PA |
| Plaintiff | **PLAINTIFF'S REPLYIN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| v. | |
| **WEYERHAEUSER CO.**      . | |
| Defendant | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**PLAINTIFF'S REPLY IN SUPPORT
OF MOTION FOR CLASS
CERTIFICATION  – COVER PAGE**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

## TABLE OF CONTENTS

I.     MORELOCK ENTERPRISES IS A PROPER CLASS REPRESENTATIVE . . . . . . . . . 1

A.    Morelock Clearly Has Standing And The Fact That It
Is No Longer In Active Business Is Irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        B.    A Class Representative Does Not Need To Have
Purchased Throughout the Damage Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.    Scott Morelock Clearly Has Shown Familiarity With
The Case And His Willingness And Ability To Prosecute
The Class Claims Vigorously . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II     DR. NETZ HAS PROVIDED AMPLE BASIS FOR FINDING
THAT COMMON PROOF IS LIKELY TO PREDOMINATE . . . . . . . . . . . . . . . . . . 14

        A.    The Proper Test Is Not Whether Dr. Netz Has Provided A
Final Damage Study, But Whether She Has Provided Credible
Methods Of Showing Class Members' Damages Such That
Class Treatment Will Be Predominantly Common And
More Efficient Than Individual Suits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        B.    Plaintiff's Proposed Relevant Market Is Considerably
More Credible Than Defendant's . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        C.    While Asserting That Different Grades And Uses Of Alder
Lumber Have No Relationship And Therefore Cannot Be
The Subject Of Formulaic Proof, Weyerhaeuser and Dr. Rausser
Themselves Contend That All Grades And Uses Of Alder
Lumber Are In The Same Relevant Market . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        D.    Dr. Netz Assumes Violation But Does Not Assume Injury . . . . . . . . . . . . . . . . 19

        E.    The Differences Between Grades and Uses Of Alder Lumber
Is No Bar To Common Proof Or Class Certification . . . . . . . . . . . . . . . . . . . . . . 20

        F.    In Other Cases, Far Greater Complexity Has Been
No Bar To Class Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        G.    Weyerhaeuser's Argument That Distributors And Brokers Have

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– TABLE OF CONTENTS, PAGE 1**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

No Injury Is Directly Contrary To Governing Precedent . . . . . . . . . . . . . . . . . . . 27

H.    There Is Substantial Data Available To Support Dr. Netz's
Proposed Methodologies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

I.    The Alleged "Conflicts" Identified By Dr. Rausser Are Illusory . . . . . . . . . . . . 29

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## TABLE OF EXHIBITS

1.    Curriculum Vitae of Dr. Janet S. Netz
2.
3.    Second Declaration of Dr. Janet S. Netz
4.
5.    Transcript of Deposition of Scott Morelock (October 12, 2004)
         Cover Page and Pages 28-29, 32-35,72-73, 108-109, 115-116, 160, 180, 184-187,
         192, 209-212, 221, 273, 280, 307

6.    Transcript of Deposition of Dr. Janet S. Netz (October 15, 2004)
         Cover Page and Pages 68-69, 78, 84-87, 90, 131-132

7.    Transcript of Deposition of Dr. Gordon C. Rausser (November 8, 2004)
         Cover Page and Pages 13, 19-20, 24-25, 30-31, 72-73, 105-109, 121-122

8.    Transcript of Trial Testimony of Dr. Gordon C. Rausser, *Washington Alder LLC v.
Weyerhaeuser Co.* (May 18, 2004)
         Cover Page and Pages 84-85, 102-103, 109

9.    Weyerhaeuser Subpoena to Washington Alder in *Morelock Enterprises, Inc.
v. Weyerhaeuser Co.*

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– TABLE OF CONTENTS, PAGE 2**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

## TABLE OF AUTHORITIES

*Arden Architectural Specialties, Inc. v.*
*Washington Mills Electro Minerals Corp.*,
2002 Westlaw 31421915 (W.D.N.Y. Sept. 17, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bachman v. Collier*,
73 F.R.D. 300, 305 (D.D.C. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17-18, 19, 31

*Blomkest Fertilizer, Inc. v. Potash Corp.*,
203 F.3d 1028 (8th Cir. 2000) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bradburn Parent/Teacher Stores, Inc. v. 3M*,
2004 Westlaw 1842987 (E.D. Pa. Aug. 18, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23, 27

*Chappelle v. E. I. DuPont de Nemours & Co.*,
75 F.R.D. 74 (E.D. Va. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*ConAgra, Inc. v. Farrington*,
635 N.E.2d 1137 (Ind. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Degregorio v. O'Bannon*,
86 F.R.D. 109 (E.D. Pa. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Federal Trade Commission v. Superior Court Trial Lawyers Association*,
493 U.S. 411 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Fisher v. Plessey Co., Ltd.*,
103 F.R.D. 150 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Follansbee v. Financial Services*,
2000 Westlaw 804690 (N.D. Ill. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
392 U.S. 481 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**TABLE OF AUTHORITIES – PAGE 1**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

*Illinois Brick Co. v. Illinois,*
431 U.S. 720 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

*Image Technical Services, Inc. v. Eastman Kodak Co.,*
1994 WL 508735 (N.D. Cal. Sept. 2, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Brand Name Pharmaceuticals Antitrust Litigation,*
1994 Westlaw 663590 (N.D. Ill. Nov. 18, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

*In re Catfish Antitrust Litigation,*
826 F. Supp. 1019 (N.D. Miss. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Citric Acid Antitrust Litigation,*
1996 Westlaw 655791 (N.D. Calif. Oct. 2, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 23, 24

*In re Domestic Air Transportation Litigation,*
137 F.R.D. 677 (N.D. Ga. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Flat Glass Antitrust Litigation,*
191 F.R.D. 472 (W.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Folding Carton Antitrust Litigation,*
75 F.R.D. 727 (N.D. Ill. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Industrial Diamonds Antitrust Litigation,*
1996 Westlaw 380234 (S.D.N.Y. July 3, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Linerboard Antitrust Litigation,*
305 F.3d 145 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Methionine Antitrust Litigation,*
204 F.R.D. 161 (N.D. Calif. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*In re Milk Products Antitrust Litigation,*
195 F.3d 430 (8th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re NASDAQ Market-Makers Antitrust Litigation,*
169 F.R.D. 493 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Visa Check/MasterMoney Antitrust Litigation,*
280 F.3d 124 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**TABLE OF AUTHORITIES – PAGE 2**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

*In re Wirebound Boxes Antitrust Litigation*,
128 F.R.D. 268 (D. Minn. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kouba v. Allstate Insurance Co.*,
32 Fed. R. Serv. 2d (Callaghan) 1330,
1981 Westlaw 16495 (E.D. Calif. Sept. 24, 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*LePage's Inc. v. 3M*,
324 F.3d 141, 164 (3d Cir. 2003) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Miller v. Hedlund*,
1983 Westlaw 1929 (D. Ore. Sept. 16, 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*National Collegiate Athletic Assn. v. Board of Regents of Univ. of Okla.*,
468 U.S. 85 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Oxygenated Fuels Assn., Inc. v. Pataki*,
293 F. Supp.2d 170 (N.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Oyster Software, Inc. v. Forms Processing, Inc.*,
2001 Westlaw 1736382 (N.D. Cal. Dec. 6, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Poulos v. Caesars World, Inc.*,
2002 Westlaw 1991180 (D. Nev. June 25, 2002),
*aff'd in part*, 379 F.3d 654 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Robinson v. Metro-North Commuter Railroad*,
267 F.3d 147 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*S&S Forage & Equipment v. UP North Plastics*,
2002 Westlaw 3178409 (D. Minn. Nov. 21, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Surowitz v. Hilton Hotels, Inc.*,
383 U.S. 363 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Umbriac v. American Snacks, Inc.*,
388 F. Supp. 265 (E.D. Pa. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Walker v. Anderson*,
742 F. Supp. 591 (S.D. Ala. 1990),
*aff'd*, 944 F.2d 841 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Weigmann v. Glorious Food, Inc.*,
169 F.R.D. 280 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Weisfeld v. Sun Chemical Corp.*,
84 Fed Appx 257 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wetzel v. Liberty Mutual Insurance Co.*,
508 F.2d 239 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4


Fed. R. Civ. P. 17(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 23(c)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 25(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
TABLE OF AUTHORITIES – PAGE 4**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

Weyerhaeuser's opposition to class certification has two main grounds. First, Weyerhaeuser relies on factually inaccurate allegations against plaintiff Morelock Enterprises, Inc. ("Morelock") in an attempt to paint Morelock as an inadequate and atypical class representative, incorrectly asserting that Morelock did not own the claim when it filed suit and carefully parsing Mr. Morelock's deposition testimony for any indication that Mr. Scott Morelock does not have a professional antitrust lawyer's understanding of the case. Similar allegations have been rejected in countless cases.

Second, Weyerhaeuser presents an expert to make standard defense assertions about the "complexity" of the market -- again, assertions very similar to those rejected in numerous cases (including some in which Weyerhaeuser's own expert has testified). In no way does Weyerhaeuser attempt to attack the credentials, reputation or expertise of Dr. Netz, plaintiff's expert. Instead, Weyerhaeuser's attack boils down to the assertion that Dr. Netz – before any merits discovery – has relied on the substantive allegations of the complaint instead of proving them herself, and has not completed a finished and detailed classwide damage study but has merely explained (in detail) that it will be economically feasible to do so before trial.

## I.    MORELOCK ENTERPRISES IS A PROPER CLASS REPRESENTATIVE

### A.    Morelock Clearly Has Standing And The Fact That It Is No Longer In Active Business Is Irrelevant

Morelock purchased approximately $64,000 in lumber from Weyerhaeuser during the damage period (Morelock Dep. at 160:11-16) and therefore clearly has standing to pursue antitrust claims against it. Weyerhaeuser relies mainly ("[f]irst and foremost," Weyer. Mem. at 10) on its

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 1**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

argument that, because Morelock is no longer in business it cannot bring injunctive claims and therefore cannot seek injunctive relief on behalf of the class. Weyer. Mem. at 10-11. Weyerhaeuser also argues that Morelock is inadequate even as to damages "because it cannot seek all available remedies" – although it does not identify any remedies other than injunctive relief that it contends Morelock cannot seek.

The U.S. Court of Appeals for the Second Circuit has already addressed the issue. *Robinson v. Metro-North Commuter Railroad*, 267 F.3d 147 (2d Cir. 2001), presented a mirror-image situation to the one in this case. In *Robinson*, a plaintiff with injunctive claims but no damage claims sought to represent a class that had both injunctive and damage claims. The district court, agreeing with the defendant, denied class certification on grounds of inadequacy. The court of appeals reversed:

> Metro-North ... argues that the Class Plaintiffs may lack an incentive to vigorously pursue the individual relief phases of the claims. Metro-North bases this contention on the fact that, as part of a settlement and stipulation with Metro-North, the Class Plaintiffs agreed only to "participate as named plaintiffs and/or class representatives ... in support of the class claims and/or [to] receive any class-wide injunctive relief," "but not [to seek] individual relief of any kind," including monetary relief. ... The district court ... reason[ed] that "[t]he net effect [of the settlement and stipulation] is that the [Class Plaintiffs] ... have little or no continued interest in pursuing damages on behalf of their fellow class members."

*Id.* at 171-72. The Court disagreed because of Plaintiffs' continuing interest in injunctive relief:

> The Class Plaintiffs, therefore, plainly have an interest in fairly and vigorously pursuing the liability stage of the pattern-or-practice claim and the class-wide aspects of the disparate impact claim because the successful prosecution of one of these portions is a prerequisite for the issuance of class-wide injunctive relief.
>
> Metro-North's contention that the Class Plaintiffs may thereafter fail to "vigorously" pursue the individual relief stages is both speculative and premature, and, we believe, is an insufficient basis for rejecting class certification at this juncture.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION – PAGE 2**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

*Id.* at 171-72 (brackets in original, citations omitted). The argument is still stronger here, where the plaintiff's claim is for damages rather than injunctive relief. Injunctive relief is an equitable remedy decided by the judge, not the jury, only *after* the jury has decided liability. Not less important, the same proof that shows liability for damages would also show the need for injunctive relief.

Other cases have faced this precise issue and have found class representation appropriate. *See, e.g., Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247-48 (3d Cir. 1975) (ex-employees not entitled to reinstatement could still adequately represent present employees); *Arden Architectural Specialties, Inc. v. Washington Mills Electro Minerals Corp.*, 2002 Westlaw 31421915 (W.D.N.Y. Sept. 17, 2002) (proposed class representative adequate in antitrust case even though it was no longer doing business); *Weigmann v. Glorious Food, Inc.*, 169 F.R.D. 280, 286 (S.D.N.Y. 1996) (class representative who no longer worked for employer and allegedly had no interest in injunctive relief could represent class including current employees, because plaintiff's "theory of liability is the same as the other members of the class" and "by originally coming forth as the sole named plaintiff ... has demonstrated a desire to have the courts rectify the asserted injustices"); *Kouba v. Allstate Insurance Co.*, 32 Fed. R. Serv. 2d (Callaghan) 1330, 1981 Westlaw 16495, *3 (E.D. Calif. Sept. 24, 1981) (ex-employee not seeking reinstatement could represent current employees); *Degregorio v. O'Bannon*, 86 F.R.D. 109, 114 (E.D. Pa. 1980) (Judge Pollak finds even if plaintiff "has no present stake in the benefits flowing from a decree looking to the future, his damage claim for past wrongs makes him an appropriate named plaintiff on behalf of a class which has interests inclusive of but broader than his own").

Indeed, the Third Circuit in *Wetzel* pointed out that there were advantages to having a

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 3**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

plaintiff who did not have an ongoing relationship with the defendant, because the plaintiff would be free from the possibility of actual or possible coercion. *Id.* at 247-48. *See also, e.g., Degregorio*, 86 F.R.D. at 114; *Chappelle v. E. I. DuPont de Nemours & Co.*, 75 F.R.D. 74, 78 (E.D. Va. 1977); *Bachman v. Collier*, 73 F.R.D. 300, 305 (D.D.C. 1976). This factor could be significantly important here, given Weyerhaeuser's dominance in the market and over the supply of lumber to active firms.

Weyerhaeuser cites only one reported case, *In re Milk Products Antitrust Litigation*, 195 F.3d 430 (8th Cir. 1999), in support of its view that a party without separate injunctive standing cannot represent a damages-plus-injunction class. But that case presented an entirely different situation: there, the district court had made – and the appellate court affirmed -- a formal ruling that the proposed class representative had no standing whatever – that is, it had standing neither as to damages nor injunctive relief. *Id.* at 435. In that circumstance, of course, it is impossible to be either a class representative or an individual plaintiff.

Alternatively, the court found that it was within the district court's discretion to find that there was a "unique defense" against the class representative because it would have to litigate against the buyers of its business as to who owned the cause of action, *id.* at 437 -- a finding presumably influenced by its view that the buyers had a very strong case. Here, by contrast, the assignee of Morelock's assets *agrees* that the cause of action remains with Morelock.

Weyerhauser cites two other cases, but neither of these supports its view. In *Miller v. Hedlund*, 1983 Westlaw 1929 (D. Ore. Sept. 16, 1983), the court stated that a plaintiff without injunctive claims could not represent a 23(b)(2) class – which by its nature seeks *only* injunctive relief – but made clear that the same plaintiff could be a proper representative of a *damages* class.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 4**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

In *S&S Forage & Equipment v. UP North Plastics*, 2002 Westlaw 3178409 (D. Minn. Nov. 21, 2002), the proposed class representative faced a unique defense in that, unlike other class members, it had signed an arbitration clause with the defendant.

As *Miller* indicates, even if the Court agrees with Weyerhaeuser's contention that Morelock is barred from pursuing injunctive relief as part of the overall relief sought for the class, the proper remedy is not to deny class certification altogether but to allow Morelock to represent the class as to liability and damages, a course authorized by Fed. R. Civ. P. 23(c)(4)(A) (court may certify as to particular issues).

Weyerhaeuser's back-up argument is that – in its view – Morelock also lacks an interest in damages because it will use the monies received to pay its creditors. To Weyerhaeuser, this makes the creditors "the real parties in interest." Weyer. Mem. at 11. First, Morelock is clearly the legal owner of the claims, so it has standing.[1]

In addition, Weyerhaeuser's argument proves far too much. Whenever an individual has significant debt, then any damage recovery it receives would go to the benefit of its creditors. Similarly, whenever a business has creditors with significant claims, then a damage judgment it

---

[1]    Weyerhaeuser asserts that the "assignment" of Morelock's antitrust claim took place on May 13, 2004, nearly two weeks after this case began, and that Weyerhaeuser therefore did not have standing at the time of bringing suit. Weyer. Mem. at 6-7. In fact, Weyerhaeuser is confusing two different transactions. The "assignment" to which Weyerhaeuser refers was not an assignment of an antitrust claim at all, but simply a security agreement between Morelock and one of its creditors, Cascadia Revolving Fund – which was not the transferee of Morelock's assets. The "assignment" whereby Columbia River Bank made clear that Morelock retained ownership of the antitrust claim was dated April 2004. *See* Morelock Dep. 55:16-56:3. In any event, even if Columbia River had been the "real party in interest" at the time suit was filed, the rules permit it to ratify the suit (Fed. R. Civ. P. 17(a)) and to transfer its interest (Fed. R. Civ. P. 25(c)), so that – even under Weyerhaeuser's view – Morelock Enterprises is now the real party in interest.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 5**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

receives is likely to be used to pay its creditors.  If (as Weyerhaeuser suggests) the creditors are therefore the "real parties in interest," it would be impossible to have such individuals or businesses that have granted security interests not only as class representatives, but even as plaintiffs.

To the contrary, courts have allowed even plaintiffs in bankruptcy to serve as class representatives. *Poulos v. Caesars World, Inc*., 2002 Westlaw 1991180 (D. Nev. June 25, 2002), *aff'd in part*, 379 F.3d 654 (9th Cir. 2004); *Walker v. Anderson*, 742 F. Supp. 591, 595 (S.D. Ala. 1990), *aff'd*, 944 F.2d 841 (11th Cir. 1991); *Follansbee v. Financial Services*, 2000 Westlaw 804690 *3 (N.D. Ill. 2000).

Indeed, Weyerhaeuser's position contradicts the very notion that a corporation is a person under the law.  Every corporation has owners; and whenever a damage judgment does not go to the benefit of a corporation's creditors, it goes to the benefit of the corporation's owners.  Under Weyerhaeuser's theory, no corporation should be a class representative because the "real parties in interest" are the owners or shareholders in the corporation.

As a practical matter, it is equally clear that Morelock has an incentive to prosecute the claims vigorously.  Scott Morelock, who (with his wife) is the principal of Morelock Enterprises, is still in the lumber industry in Oregon, continuing to purchase alder lumber in his new position (which also means that he has no incentive to slight or disregard injunctive claims).  Morelock Dep. 108:14-109:11.[2]  Mr. Morelock was the chairman of the Northwest Wood Products Association --

---

[2]    The primary reason why Mr. Morelock's former company, Morelock Enterprises, rather than his current company, Morewood Products, is put forward as class representative is that, unlike Morelock Enterprises, Morewood only began business in late April 2004 and has not yet purchased alder lumber directly from Weyerhaeuser, although it has purchased alder lumber from other sources.  *See* Morelock Dep. 109:2-3, 109:12-17.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 6**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

a trade association with approximately 70 dues-paying companies as members -- for five years ending in 2004, and currently serves on the Association's Board.  Morelock Dep. 209:18-212:1. Moreover, Mr. Morelock (the decisionmaker for Morelock) stands to benefit if this Court awards an incentive fee to Morelock Enterprises for time and other services provided in the interest of the class – which this Court would only consider doing if it believed that Morelock Enterprises did good and vigorous work as class representative.  Thus, both as a formal legal issue and on a "common sense" basis, there is every reason to believe that Morelock Enterprises will vigorously represent the class.

Moreover, some caution is appropriate where "defendants, who naturally have no interest in the successful prosecution of the class suit against them, are called upon to interpose arguments ... verbally grounded upon a concern for the 'best' representation for the class, while the implicit, but nonetheless real objective of their vigorous legal assault is to insure 'no' representation for the class." *Fisher v. Plessey Co., Ltd.*, 103 F.R.D. 150, 157 n.7 (S.D.N.Y. 1984), quoting *Umbriac v. American Snacks, Inc.*, 388 F. Supp. 265, 275 (E.D. Pa. 1975).

It is not accidental that the plaintiff who has actually come forward to challenge Weyerhaeuser's practices is no longer beholden for future alder supply to Weyerhaeuser – a proven monopolist of sawlogs, an alleged monopolist of lumber, and a company that (the record in *Siletz* indicates) threatened to cut off at least one uncooperative direct purchaser, Westwood Lumber. Weyerhaeuser would benefit from excluding ex-customers from bringing a class action because it is much less likely that a current customer will want to run the risk of antagonizing Weyerhaeuser. But current customers would *not* benefit from cutting off the most likely avenue for obtaining relief.

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– PAGE 7**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

**B.**    **A Class Representative Does Not Need To Have**
**Purchased Throughout the Damage Period**

Weyerhaeuser's next argument is that Morelock cannot represent a class because its

purchases only took place during three of the four years of the damage period. Weyerhaeuser's only

authority for this is one decision from thirty years ago and another from twenty-seven years ago.

Weyer Mem. at 12.

This is understandable, because the case law since then is to the contrary. *In re Industrial*

*Diamonds Antitrust Litigation*, 1996 Westlaw 380234, *5-6 (S.D.N.Y. July 3, 1996); *In re*

*Wirebound Boxes Antitrust Litigation*, 128 F.R.D. 268, 270-71 (D. Minn. 1989).

While Weyerhaeuser claims that Morelock purchased only "*de minimis* amounts" of

Weyerhaeuser alder lumber (Weyer. Mem. at 13), Morelock in fact purchased (as noted above) some

$64,000 during the damage period. (Morelock Dep. at 160:11-16.)

Weyerhaeuser also argues that Morelock cannot be a valid class representative because

Morelock did not purchase every grade of lumber.   However, it is not necessary for a class

representative to have bought every type of the product in the relevant product market. *See, e.g., In*

*re Flat Glass Antitrust Litigation*, 191 F.R.D. 472, 480 (W.D. Pa. 1999); *In re Citric Acid Antitrust*

*Litigation*, 1996 Westlaw 655791, *1, *5 (N.D. Calif. Oct. 2, 1996) (no class representative had

purchased non-food grade citric acid, even though it had many non-food uses); *Industrial Diamonds*,

1996 Westlaw 380234, *5-*6 (plaintiff need not buy all affected products).  It is enough that the

plaintiff has some antitrust injury within the damage period; it need not be shown that the plaintiff

had continuous injury throughout.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 8**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

C.      **Scott Morelock Clearly Has Shown Familiarity With
        The Case And His Willingness And Ability To Prosecute
        The Class Claims Vigorously**

Weyerhaeuser's last contention against Morelock's adequacy is that Scott Morelock does not have sufficient familiarity with the claim or the issues in the case for his company to serve as a class representative. Weyer. Mem. at 13-15. This is a common approach for class defendants, since class representatives are usually not lawyers and typically do not have complete knowledge of the applicable legal issues; and they are usually not high-level insiders of the defendant and therefore do not have a complete knowledge of defendant's anticompetitive scheme.

This argument has been rejected in case after case. As the court stated in *Citric Acid*, "[t]he threshold of knowledge required to qualify a class representative is not high; a party ... will be deemed inadequate only if she is 'startlingly unfamiliar' with the case." *Id*. at *4-*5 (citation omitted.) *See also Surowitz v. Hilton Hotels, Inc*., 383 U.S. 363, 372-73 (1966) (derivative suit representative who had no knowledge of English or of claims and relied entirely on her nephew found adequate).

The argument is still less persuasive in this case. Mr. Morelock has been in the lumber business since approximately 1966 (when he was nine years old). Morelock Dep. at 29:16-18. As noted above, he was the chairman of the seventy-member Northwest Wood Products Association for five years and continues to serve on its board. Morelock Dep. 209:18-212:1. Mr. Morelock's experience in the lumber industry is extensive enough that Weyerhaeuser's counsel was able to take his deposition for seven hours with questions on the relevant market, the uses of alder and other hardwoods, and related issues. Out of those seven hours and 300 pages of testimony, these are all

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– PAGE 9**

of the alleged lapses asserted by Weyerhaeuser:

• "Mr. Morelock believed that the class would include customers outside of the United States." Weyer. Mem. at 14. This was, in fact, what was set forth in the Complaint. Am. Compl. ¶15. Therefore, Mr. Morelock is hardly to be blamed for this.

• "Mr. Morelock believed ... that [he] would not need to represent the future interest of customers who continue to purchase alder lumber." Weyer. Mem. at 14. Mr. Morelock's testimony on this was unclear, mainly because Weyerhaeuser's questions were unclear. Mr. Morelock had already accurately testified as to the class definition: "Members of the class would be any company or perhaps individual that purchased alder lumber directly from Weyerhaeuser or Northwest Hardwoods." Morelock Dep. at 32:24-33:2, 34:5-8. He also correctly believed that the class included wholesalers and distributors. Morelock Dep. 33:3-4,18-21, 35:2-4,6,8. Weyerhaeuser points to the following testimony:

> Q. Now, is it your position that you're undertaking to represent people who have purchased after June 30, 2003?
>
> A. It would be my understanding, yes, that that would be the case.
>
> Q. And you're also undertaking to represent people who continue in business now and into the future in the purchase and sale of alder – purchase and manufacture or resale of alder?
>
> A. I believe that the class with this document filing in August has a four year backward looking, not forward looking, is my understanding.
>
> Q. You're not undertaking to represent people for future –
>
> A. No.
>
> Q. Okay. That's all I have. Thank you.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 10**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

Morelock Dep. 307:15-308:5.  Weyerhaeuser's interpretation is a possible one, but it is also plausible that Mr. Morelock was only expressing his view as to whether future *damages* would be sought. In addition, Weyerhaeuser's questions on this were not models of clarity, and could be interpreted as asking whether Morelock would be representing future purchasers in addition to purchasers who had purchased as of the date of the Complaint. Even if Weyerhaeuser's interpretation is correct, this would be the only mistake that Weyerhaeuser actually identifies in Mr. Morelock's testimony.

- "[P]laintiff does not 'know the specifics' of its responsibilities as the class representative." Weyer. Mem. at 14 (citations omitted).  In fact, Mr. Morelock testified "I'm not sure that I know the specifics.  But it would be to do whatever's required to – in the best interest of the class, to represent the class in the best manner that I can."  Morelock Dep. at 280:4-8. Indeed, in Mr. Morelock's retention letter with counsel, he agreed "to devote the time and effort ... to represent adequately the class," to "vigorously represent the interests of the class and reasonably cooperate with counsel (and other class members as necessary) in the prosecution of the litigation," and that he is "familiar with, generally understand, and agree with the allegations to be made on behalf of the class and will review the complaint ... setting forth the class' claims before it is filed with the Court."  Tongue Aff. (appended to Weyer. Mem.) Ex. 7 at 2.

- "[P]laintiff does not 'know' ... whether it has *any* control over the action." Weyer. Mem. at 14 (emphasis added). Weyerhaeuser's basis for this statement was that Mr. Morelock testified that he did not know whether he "or the counsel has the determination whether or

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 11**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

not to continue or dismiss the lawsuit." Morelock Dep. at 280:9-11,13. This is a fairly complex legal question – indeed, the question was misleading (and objected to by Morelock's counsel) because once a class is certified, *neither* the client nor counsel can decide to dismiss the lawsuit without Court approval.

•   Plaintiff lacks "the necessary insight regarding the substantive allegations in the case." Weyer. Mem. at 14. The only reasons Weyerhaeuser provides are as follows:

(1)   Mr. Morelock supposedly testified that alder lumber sometimes competes against other hardwoods. Weyer. Mem. at 14. Weyerhaeuser views this as an unforgiveable transgression in a class representative because "it is critical to the case that alder lumber be a relevant product market." *Id*. Presumably, Mr. Morelock should have lied and said that alder lumber *never* competes with other hardwoods. But in fact, the issue in deciding whether alder lumber is a separate relevant market is not whether it never competes with other hardwoods, but – as Weyerhaeuser's expert puts it – whether there is "*sufficient* substitutability" *generally*. Rausser Dep. at 13:4-12.

Indeed, Mr. Morelock's testimony clearly supports the view that alder is in a separate market. First, even in the testimony Weyerhaeuser cites to, Mr. Morelock says only that for flooring some customers would view price as an important factor. Morelock Dep. 1at 84:1-187:8. Even as to flooring, alder had "unique characteristics." *Id*. at 273:9-13. In the moulding context, "[t]he unique characteristics of alder ... are a big factor in decision-making. There's a very large, in the west, very large trend toward

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– PAGE 12**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

this rustic knotty interior decorating theme." *Id.* at 192:12-17. According to Mr. Morelock's testimony, hardwoods each have "unique textures, colors, patterns and styles ... [which] allow the creation of dramatically different looks." *Id.* at 180:18-24.

(2)    Mr. Morelock never considered making a claim until consulting with his counsel. Weyer. Mem. at 14. But Mr. Morelock is not a legal professional and can hardly have been expected to know about the Court's judgment in *Siletz* on his own. It should be noted that the firm that contacted him had represented Morelock Enterprises continuously since the 1970s. Morelock Dep. at 28:20-23.

(3)    "[T]hat he has no knowledge that Weyerhaeuser ever overcharged Morelock or any other customers." Weyer. Mem. at 14. Short of being either an economic expert or a Weyerhaeuser insider, how could Mr. Morelock know this? However, Mr. Morelock did testify that in his experience, prices of alder lumber were steadily increasing during 2000-2004, Morelock Dep. at 221:5-7,9-15, and that Weyerhaeuser prices were typically above those of other mills. *Id.* at 115:10-116:5.

(4)    "[T]hat he does not have any basis for calculating the amount of any hypothetical overcharge." Weyer. Mem. at 14. Here, too, unless Mr. Morelock were an expert economist, it is difficult to see how he could be expected to "calculat[e] the amount of any hypothetical overcharge."

(5)    That he supposedly testified "that any calculation is 'just purely speculation.'" Weyer. Mem. at 14. To the contrary, Mr. Morelock testified only that *his own* assumption that an overcharge could be 10-15% was purely speculation – not that

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 13**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

"any" calculation would be.  Morelock Dep. at 160:3-10.

If Mr. Morelock – with forty years of experience in the lumber market -- is deemed to lack familiarity with and insight into the case, it will be rare indeed to find a class representative in any case who can pass muster.

**II      DR. NETZ HAS PROVIDED AMPLE BASIS FOR FINDING
         THAT COMMON PROOF IS LIKELY TO PREDOMINATE**

Weyerhaeuser does not dispute the credentials, qualifications, or standing of Dr. Janet Netz, Plaintiff's expert economic witness on the feasibility of common, classwide proof of injury and damages.  Moreover, Dr. Netz proposes standard, well-accepted methods of proving common damages -- Weyerhaeuser itself refers to them as "textbook methodologies."  Weyer. Mem. at 23. In her Declaration, Dr. Netz explains in detail how these methodologies can be applied in this case and to all class members in common.

The lengthy arguments Weyerhaeuser provides against Dr. Netz's expert declaration basically come down to two points.  First, Weyerhaeuser argues that the alder lumber industry is too diverse and complex to be the subject of classwide proof; and this is tied in with Weyerhaeuser's (improper) argument that the relevant market allegations of the complaint should be disregarded.  Second, Weyerhaeuser complains that Dr. Netz – before any merits discovery – has not yet provided a complete merits damage study using her proposed common formulas.

**A.      The Proper Test Is Not Whether Dr. Netz Has Provided A
          Final Damage Study, But Whether She Has Provided Credible
          Methods Of Showing Class Members' Damages Such That
          Class Treatment Will Be Predominantly Common And
          More Efficient Than Individual Suits**

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
 – PAGE 14**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

Much of Weyerhaeuser's argument consists of making factual assertions – assertions that Plaintiff cannot yet test because it has not yet obtained discovery – and then complaining that Dr. Netz has not already fully accounted for them in her damage model.[3]

That is not, however, the proper standard at the class certification stage. Class certification does not require "[a]n extensive evidentiary showing". *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Plaintiff's expert is not required at the class certification stage actually to prove common impact or to provide an actual damage formula, but merely to show that there will be viable methods of proving damages on a classwide basis. *In re Linerboard Antitrust Litigation*, 305 F.3d 145, 152 (3d Cir. 2002); *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 135 (2d Cir. 2001). Before discovery, a defendant's expert in an antitrust case will always have a substantial advantage in access to evidence, but relying on such evidence would require that one simply trust defendant's expert.[4] It is therefore not surprising that courts disapprove of "weigh[ing] conflicting expert evidence or engag[ing] in statistical dueling of experts" at the class certification stage. *Visa*

---

[3]    Some examples: "she concedes that her theories would not apply if the alder lumber market definition changes, but has not done any analysis into whether there is an alder lumber market." Weyer. Mem. at 17.  "Dr. Netz has made no effort to apply her theories to this case ...." Weyer Mem. at 20 n.13. "Dr. Netz admits she has no opinion whether alder lumber prices have been supra-competitive in the time period in which the price for alder sawlogs has been [allegedly] decreasing." Weyer. Mem. at 21. "She has not actually considered whether Weyerhaeuser has charged supra-competitive prices for alder lumber." *Id.*

[4]    For example, Dr. Rausser presents a classwide damage model of his own, purporting to show that Weyerhaeuser's lumber profits supposedly decreased over the damage period. Rausser Decl. ¶¶ 34-35. Of course, because Plaintiff does not yet have access to Weyerhaeuser's profit data, it would be unfair to demand that Plaintiff do the same in rebuttal. Similarly, Dr. Rausser purports to present data about the relative prices of different grades of alder lumber and changes in those prices over time, but discovery is necessary – at the merits stage – to allow Plaintiff to test his conclusions.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 15**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

*Check*, 280 F.3d at 135.[5] In *Citric Acid*, the court held that "[e]ven those courts that require plaintiffs to make a showing that common impact can be proven only require that plaintiffs 'come forward with seemingly realistic methodologies,' as plaintiffs have done in this case." *Id.* at *7, quoting *In re Brand Name Pharmaceuticals Antitrust Litigation*, 1994 Westlaw 663590 (N.D. Ill. Nov. 18, 1994). *See also In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 493, 521 (S.D.N.Y. 1996) (validity of "before-and-after" and yardstick methodologies "will be adjudicated *at trial* based upon *economic theory, data sources*, and *statistical techniques* that are entirely common to the class") (emphasis added). In *Bradburn Parent/Teacher Stores, Inc. v. 3M*, 2004 Westlaw 1842987 (E.D. Pa. Aug. 18, 2004), the court held:

> Defendant argues that Dr. Kamien has merely assumed the existence of impact in this case, without any empirical or theoretical basis for this assumption. Dr. Kamien did admit at the hearing that, for purposes of his research, he assumed the existence of common impact among class members. However, Dr. Kamien explained that this assumption was based upon the allegations made in Plaintiff's Complaint, which he assumed to be true for purposes of his research. Dr. Kamien's admission is in no way fatal to class certification, because Plaintiff is not required at this stage of the litigation to establish, as fact, that each class member has suffered economic injury.

*Id.* at *14 (footnote, citation deleted). The court granted certification even though Dr. Kamien had not yet actually applied the methodologies to the industry, despite the defendant's protests that the methodology would "fail[] to take into account the complexities of the market". *Id.* at *17.

It is worth noting that courts in other cases have not found Dr. Rausser's expert testimony

---

[5]    Interestingly, although Plaintiff quoted repeatedly from *Visa Check* in their brief, Defendant's brief does not so much as mention it. 3M points to *Weisfeld v. Sun Chemical Corp.*, 84 Fed Appx 257, 264 (3d Cir. 2004), as supposedly setting a high standard for expert reports. However, that case was expressly designated "not precedential" by the Third Circuit, and involved an extreme case in which the expert had provided (according to the court) "no analysis" whatever.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 16**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

invariably persuasive.  *See Blomkest Fertilizer, Inc. v. Potash Corp.*, 203 F.3d 1028, 1038 (8th Cir.

2000) (en banc) (Dr. Rausser's report "fundamentally unreliable" and "not probative"); *Oxygenated*

*Fuels Assn., Inc. v. Pataki*, 293 F. Supp.2d 170, 181, 182 (N.D.N.Y. 2003) ("the Court finds that the

testimony of plaintiff's economist, Gordon Rausser, was speculative and has insufficient evidentiary

support"); *Oyster Software, Inc. v. Forms Processing, Inc.*, 2001 Westlaw 1736382, *6 (N.D. Cal.

Dec. 6, 2001) (granting motion for partial summary judgment despite Dr. Rausser's report, finding

that "he simply assumes" key facts, and noting that "an expert's declaration, full of assertions but

empty of facts and reasons won't get a case past a motion for summary judgment") (internal

quotation marks and italics omitted); *In re Catfish Antitrust Litigation*, 826 F. Supp. 1019, 1038 &

n.22 (N.D. Miss. 1993) (court certifies class despite Dr. Rausser's testimony to effect that market

was a "highly diverse, fragmented industry which is totally incapable of ... producing any

predominating result or consequence"; court notes lack of usefulness of "expert economist

conclusions concerning the merits of the case"); *ConAgra, Inc. v. Farrington*, 635 N.E.2d 1137,

1143 (Ind. App. 1994) (upholding class certification despite Dr. Rausser's testimony to contrary).

   **B.**    **Plaintiff's Proposed Relevant Market Is Considerably**
             **More Credible Than Defendant's**

   Much of Weyerhaeuser's argument consists of arguing that Dr. Netz improperly assumes that

the relevant market is one for finished alder lumber in the Pacific Northwest. *See, e.g.*, Weyer. Mem.

at 17.  It is inappropriate for Weyerhaeuser to try to litigate this merits issue at the class certification

stage, when plaintiff's substantive allegations are assumed to be true. *Blackie v. Barrack*, 524 F.2d

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 17**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

891, 901 (9th Cir. 1975).[6]

In any event, Plaintiff's proposed relevant market – finished alder lumber in the Pacific Northwest – is far more credible than Defendant's proposed broader hardwood lumber market that includes alder and "many hardwood species." Rausser Decl. ¶ 5. The jury in *Siletz* has already found that there is a relevant product market for alder sawlogs in the Pacific Northwest. Whether or not the Court grants collateral estoppel in this case based on the *Siletz* verdict, clearly this alder sawlog market is a plausible and defensible theory with sufficient validity to be presented to a jury. However, Dr. Rausser has testified that, if there is a broader hardwood *lumber* market, or a lumber market broader than the Pacific Northwest, then the sawlog market found in *Siletz* makes no sense. Rausser Dep. at 72:9-73:16.

By the same logic, if a relevant alder sawlog market in the Pacific Northwest has sufficient validity to be presented to a jury, then so does a relevant alder lumber market in the Pacific Northwest.[7]  Moreover, unlike Dr. Rausser's proposed hardwood market, it does not have the

---

[6]    Weyerhaeuser's brief is rife with merits assertions. For example:

- "as Dr. Rausser established, Weyerhaeuser's profitability decreased over the three [sic] years of the alleged damages period and the decrease had no relation to log prices." Weyer. Mem. at 20.
- "the impossible task of reconciling the facts of this case with a theory of unlawful overcharge," Weyer. Mem. at 21.
- "there is no theoretical basis to assume that any price increase for alder sawlogs is passed on to any – much less all – purchasers of alder lumber." Weyer. Mem. at 22.
- "Dr. Rausser *established* [sic] ... 'Low grades ... *may* face a very elastic demand .... High grades ... *may* be characterized by a less elastic demand." Weyer. Mem. at 22 (emphasis added), quoting Rausser Decl. ¶ 18.

[7]    Under Dr. Rausser's reasoning, the jury in *Siletz* was correct in rejecting the plaintiffs' proposed nationwide relevant lumber market, because such a nationwide lumber market is inconsistent with the regional sawlog market found by the jury.

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– PAGE 18**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

disadvantage of being inconsistent with the jury verdict in *Siletz*.

**C.    While Asserting That Different Grades And Uses Of Alder Lumber Have No Relationship And Therefore Cannot Be The Subject Of Formulaic Proof, Weyerhaeuser and Dr. Rausser Themselves Contend That All Grades And Uses Of Alder Lumber Are In The Same Relevant Market**

Significantly, Weyerhaeuser's own proposed hardwood market includes *all grades and uses* of alder lumber.  Rausser Decl. ¶ 5; Rausser Dep. at 13:4-16, 121:20-22, 122:1.  This necessarily means that an ability to monopolize one grade or use of alder lumber would imply the ability to monopolize every other grade and use of alder lumber.

Furthermore, Dr. Rausser acknowledges that market definition includes an analysis of whether there is "sufficient substitutability" among the products in that market.  *Id.* at 13:4-12.  Dr. Rausser's proposed market includes all grades and uses of alder lumber, and he believes that the ability to monopolize one grade or use of alder lumber goes together with the ability to monopolize the other grades and uses; he differs from Dr. Netz only in believing that this ability to monopolize also goes along with the ability to monopolize other hardwoods.  Yet -- contrary to *Blackie v. Barrack* -- Weyerhaeuser and Dr. Rausser scoff at Dr. Netz for assuming (consistently with the complaint) that all grades and uses of alder lumber are in the same relevant market.  *See, e.g.*, Weyer. Mem. at 17 (Dr. Netz's formulas "based on a critical but erroneous assumption that finished alder lumber constitutes a relevant market"; "she ... has not done any analysis into whether there is an alder lumber market")

**D.    Dr. Netz Assumes Violation But Does Not Assume Injury**

Weyerhaeuser asserts that "Dr. Netz merely assumes that there has been an overcharge in the

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– PAGE 19**

alder lumber market, and limits her opinion to establishing a formula for calculating the extent of damages." Weyer. Mem. at 21.

To the contrary, Dr. Netz makes clear that the proposed formulas for damages would also prove the fact of injury in common across all members of the class. Netz Decl. ¶ 25. Weyerhaeuser quotes Dr. Netz's statement that "I come in after guilt or illegality has been established and say given that, what are damages." Weyer. Mem. at 21, quoting Netz Dep. at 78:7-9, and claim that "her 'walled off' assignment does not include establishing any element of liability". Weyer. Mem. at 21, quoting Netz Dep. at 78:7. But both of the quoted comments are from a paragraph in which Dr. Netz describes her task as "looking at *common impact* and common method". Netz Dep. at 78:4-5 (emphasis added).

Moreover, Dr. Netz does not simply "assume" an overcharge. Instead, she testified that, if Plaintiff's market definition is correct, there is a strong likelihood that Weyerhaeuser imposed overcharges; and if Weyerhaeuser overcharged some customers then it is highly likely that it overcharged all customers, and that if Weyerhaeuser did in fact monopolize a finished alder lumber market, then it is implausible to contend that Weyerhaeuser did not do so for the purpose of imposing monopoly overcharges. Netz. Decl.¶¶ 19-25; Netz Dep. at 90:7-15, 131:5-20, 132:6-9.

### E.   The Differences Between Grades and Uses Of Alder Lumber Is No Bar To Common Proof Or Class Certification

Weyerhaeuser's major argument to prove the complexity of the lumber market is to point to the different grades and uses of lumber. Moreover, they in effect demand that Dr. Netz – before merits discovery – provide a definitive merits study of how differences in grades and other alleged

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– PAGE 20**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

sources of complexity will be accounted for in her study. But under either market definition, injury or its absence will be determined classwide. If Defendant's proposed relevant product market is correct, then it can monopolize no alder and there is no liability to *anybody* in the class. If Plaintiff's proposed relevant product market is correct, then Weyerhaeuser was able to monopolize all finished alder lumber, regardless of grade or use. This means that Weyerhaeuser could charge inflated prices to *all* class members, although the amount of the overcharge will not be the same for all class members. *See* Netz Dep. at 69:18-70:1, 84:20-86:25. Thus, under either market theory, the class's claims rise or fall together.

Weyerhaeuser presents a caricature of Dr. Netz's opinions, as if she simply seeks to apply a "single benchmark price" to every lumber transaction. Weyer. Mem. at 26, quoting Rausser Decl. ¶ 19. A substantial part of Weyerhaeuser's objection is that Dr. Netz would supposedly not take differences between alder grades into account. To the contrary, Dr. Netz discussed at length how a common formula could account for different "but for" prices for particular alder lumber grades:

> One way to do it would be to look at the relationship between the prices for the different grades of alder that existed in the actual world and adjust them to get the competitive level by the same percent. Doing that would be reasonable if ... none of the conduct affected one grade more than another.
>
> Q. If the conduct affected one grade more than another, then what would you have to do, or would you be able to apply this analysis if it were the case that it affected one grade more than another?
>
> A. Well, one could calculate the counter-factual price accordingly. ... [W]hatever benchmark method was being used or equilibrium model method might need to be adjusted to account for that fact.
>
> Q. Do you know, sitting here today, whether you would be able to do that?

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 21**

A. I believe that I would be able to, yes.

Netz Dep. at 68:25-69:17. Moreover, the damage methods could take account of any differences in

demand for different grades:

> If Weyerhaeuser has market power in the alder lumber market, as alleged in the Complaint, then they can charge monopoly prices to everybody.
> It is true that if they are able to price discriminate, meaning charge different prices to different segments of buyers, that the monopoly price for consumers who can use other types of wood in their production process could be different than the monopoly price for consumers who can only use alder in their production process, but it doesn't mean that they both wouldn't be charged a monopoly price.

> Q. Okay. In that scenario ... where different prices would be charged because in one use, customers had an alternative; another end use, customers didn't have an alternative, do your various formulas that you have in your report account for that so that ... difference in terms of ... what price the customer could be charged in taken into account?

> A. Yes.

> Q. How?

> A. The methodologies can be applied in that situation. ... for example, taking the profitability benchmark approach, one could look at the overall profitability of Weyerhaeuser and alder, or profitability for the individual mills. And that profitability, rather than being a function of a single price, would be a function of multiple prices, and so ... one could calculate multiple counter-factual prices using the same methodology as I have described in the report, similarly for the price benchmark methods that I describe as well.

> Q. But you would have come up with separate pricing – separate damage formulas for somebody purchasing for floor as opposed to somebody purchasing for a product that has no substitute to alder?

> A. Well, it would be a common method. It would simply take into account that different purchasers of alder lumber paid different prices, if it is true that Weyerhaeuser does price discriminate in the manner that I have supposed.

> Q. So if it did price discriminate in the manner that you suppose, you would have to

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 22**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

do a separate analysis – with the same methodology but a separate analysis depending upon end use?

A. No, it would be the same analysis. ... it could be done using the same formula. It's just that the formula, instead of having one variable, one price, it would have two prices.

Netz Dep. at 85:10-87:12.

> **F.      In Other Cases, Far Greater Complexity Has Been
>  No Bar To Class Certification**

In any event, far greater complexity has proven no bar in other class actions. "[C]ontentions of infinite diversity of product, marketing practices, and pricing have been made in numerous cases and rejected." *Citric Acid*, 1996 Westlaw 655791, *6, quoting *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 734 (N.D. Ill. 1977); *Brand Name Prescription Drugs*, 1994 Westlaw 663590, *5; *see also* Plaintiffs' Mem. in Support of Class Cert. at 19.

In *Bradburn*, 2004 Westlaw 1842987, "there are more than 1,000 different tape products in the market definition of transparent tape, and ... the prices for each product vary greatly depending upon the customer and the time period." *Id.* at *17.   Nonetheless, the Court approved the class, noting that the plaintiff's expert had proposed use of a before-and-after benchmark and a similar market benchmark, which are "standard methods for proving damages in an antitrust case." *Id.* at *13.

In *Citric Acid*, the product "comes in a variety of forms, including crystal, powder, and liquid, and has a wide range of uses.  It is used as a preservative and flavoring agent in food; as a phosphate substitute in cleaning products; as a flavoring and stabilizing agent in pharmaceuticals; for industrial cleaning and finishing; and in agriculture." *Id.* at *1.  All of these products had

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– PAGE 23**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

different prices.  *Id*. at *6.  Predictably, defendants argued that this made common proof impossible,

yet certification was granted.

In *In re Domestic Air Transportation Litigation*, 137 F.R.D. 677 (N.D. Ga. 1991),  the court

certified a class of approximately 12.5 million airline ticket purchasers in an antitrust case involving

allegations that 9 different airlines fixed prices for every seat on every flight to or from any of 23 hub

airports.  The defendants argued that "differing competitive conditions" for every hub and every

route, "varying pricing structures at each hub and between individual city pairs," and the existence

of "thousands of fares and fare codes" added up to "an exceedingly complex industry that goes

through mind-boggling number of fare changes each day."  137 F.R.D. at 685, 689, 691.

In *Image Technical Services, Inc. v. Eastman Kodak Co*., 1994 WL 508735 (N.D. Cal. Sept.

2, 1994), the District Court (on remand from the Supreme Court) found that common issues would

predominate and certified the class, holding that the plaintiffs had "alleged and appear to have a

viable method of attempting to prove common impact" by estimating the competitive prices that

would have prevailed absent the defendant's antitrust violations.  *Id*. at *7-9.  The Court emphasized

that it would not predetermine whether plaintiffs' methodology would persuade a jury of common

impact, but rather "assume[d] that the plaintiffs' allegations are true."  *Id*. at 7-8.

Indeed, Dr. Rausser himself has been able to perform similar analyses in the past.    In both

this case and *Washington Alder*, Dr. Rausser has constructed an "attribution analysis" to determine

exactly what factors accounted for Weyerhaeuser's profit margins.  Rausser Decl. at 21, Table 6;

Rausser Testimony (*Washington Alder*) at 84:17-85:3, 109:7-9.  In *Washington Alder*, he was also

able to develop a "derived demand curve" to calculate "but-for" prices for alder sawlogs.  *Id*. at

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– PAGE 24**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

84:17-85:3, 109:7-9. In a case which the product was only sold in conjunction with different services, Dr. Rausser "backed out ... the prices [of] those particular services." Rausser Dep. at 19:5-25, 20:3-4, 20:12-14. In another case, Dr. Rausser was able to "separat[e] out the other causal factors that explain the difference between prices in the two periods, specifically what external factors move demand and supply and cause some variation or adjustments in prices above and beyond the alleged conspiratorial setting of prices"; these factors included "[e]conomic growth worldwide, export demand, income levels, exchange rates, technology with regard to the cost of production." Rausser Dep. at 24:23-25:14. All of these are factors that he asserts Dr. Netz will be unable to separate out. Weyer. Mem. at 29; Rausser Dep. ¶ 41.

Moreover, while Dr. Rausser claims that the lumber industry is far too complex to allow for feasible formulaic proof on a classwide basis, he was involved in a case in which he was able to calculate "but for" pricing for thousands of different brand name pharmaceuticals in thousands of different product markets. Rausser Dep. at 30:11-20,24, 31:2-4.

Once it is determined that the alleged complexity in the alder lumber market is no greater than in other class actions, Weyerhaeuser's remaining objections apply equally to an individual suit. An individual plaintiff would still need to use benchmark methods or an equilibrium model to show damages. Thus, Weyerhaeuser's arguments against use of a "before and after" benchmark and against use of use of another hardwood as a benchmark; its criticisms regarding use of profit margins; and its speculation about the difficulty of an equilibrium model, would all apply to any individual plaintiff's attempt to show damages. It is therefore far more efficient to resolve these issues in a single class action.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 25**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

Weyerhaeuser asserts -- relying solely on a single, 29-year old decision -- that common proof is somehow easier in a price-fixing case than in a monopolization case. Weyer. Mem. at 26-27. Relying on that one decision, Weyerhaeuser argues that class conspiracy cases involving common classwide proof must be disregarded because they are all supposedly based on a presumption that a conspiracy necessarily hurts every customer. *Id.*

However, this argument is based on a misunderstanding of "price-fixing," which Weyerhaeuser interprets as "the agreement to have an overcharge for all the products involved notwithstanding the heterogeneity." Weyer. Mem. at 27. To the contrary, "price-fixing" includes a wide range of conduct, including a simple agreement among competitors to divide up markets or limit supply – which will naturally lead to a price rise. The Supreme Court teaches that the "'constriction of supply is the essence of ' price-fixing,' whether it be accomplished by agreeing upon a price, which will decrease the quantity demanded, *or by agreeing upon an output, which will increase the price offered.'*" *Federal Trade Commission v. Superior Court Trial Lawyers Association*, 493 U.S. 411, 423 (1990) (quoting Court of Appeals) (emphasis supplied). Further, an agreement among competitors to restrict supply is " ' unquestionably a 'naked [*per se*] restraint' on price and output.'" *Id.* (citing *National Collegiate Athletic Assn. v. Board of Regents of Univ. of Okla.*, 468 U.S. 85, 110 (1984)).

Contrary to Weyerhaeuser's assumption, it is a relatively rare price-fixing case that involves an explicit "agreement to raise the price of all grades," Weyer. Mem. at 27, rather than an agreement to take action that reduces competition and allows prices to go up.

The whole point of a "price-fixing" conspiracy, in fact, is for non-monopolists to get the

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– PAGE 26**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

powers of a monopolist by combining. Thus, the only difference between a group of companies deciding to raise prices and people within a single company with monopoly power deciding to raise prices is that in the latter case, the price increase is much more likely to be effective and pervasive, because there is no need to police the conspiracy to ensure compliance. Indeed, courts have applied the same standards to monopolization as to price-fixing cases. *See LePage's Inc. v. 3M,* 324 F.3d 141, 164 (3d Cir. 2003) (en banc) ("Once a monopolist achieves its goal by excluding potential competitors, it can then increase the price of its product to the point at which it will maximize its profit. This *price is invariably higher than the price determined in a competitive market.*"); *Bradburn,* 2004 Westlaw 1842987, *13 ("when a monopolist unlawfully maintains its monopoly power ... it is logical, at least as a general rule, to presume that all class members have suffered injury as a result of the conduct, in the form of supracompetitive prices").

### G.    Weyerhaeuser's Argument That Distributors And Brokers Have No Injury Is Directly Contrary To Governing Precedent

Weyerhaeuser argues that "[e]ven if plaintiff prevails in its theories, distributors cannot suffer antitrust injury" because they "actually benefit from price increases," Weyer. Mem. at 32, because they "can earn a fixed percentage mark-up paid by the buyer." Rausser Decl. ¶ 26. Therefore, "when the price they pay for lumber increases, the price the distributor charges to their customer increases, as does the distributor's mark-up." *Id.*

The Supreme Court has foreclosed this argument. In *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 494 (1968), and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729 (1977), the Court held that under federal antitrust law a direct purchaser can recover the full amount

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**
**– PAGE 27**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

of an overcharge whether or not it passes the overcharge on to its customers. Thus, defendants cannot raise "pass-on" as a defense.[8]

**H.**  **There Is Substantial Data Available To Support Dr. Netz's Proposed Methodologies**

In Mr. Morelock's deposition, Weyerhaeuser was able to provide extensive data from its own files setting forth exactly what Morelock Enterprises had purchased, the dates, amounts, grades, and prices. Tongue Aff. Ex. 5. As this reflects, Weyerhaeuser has full transaction data for all class members, so it can be determined what each class member paid so as to compare it to the "but for" prices of the same products.

Moreover, Dr. Rausser's own declaration, and his testimony in Washington Alder, indicate that Weyerhaeuser also has full data reflecting its own profit margins that can be used to benchmark competitive prices from either the alder lumber market before monopolization or from other hardwood markets where Weyerhaeuser does not have a monopoly. Rausser Decl. ¶ 34 & Table 6; Rausser Testimony (*Washington Alder*) at 102:23-103:22. Thus, there is sufficient transaction data to perform the "before and after" study proposed by Dr. Netz.

Regarding whether Weyerhaeuser's profits on other, more competitive hardwoods can be used as a benchmark, Dr. Netz testifies that Weyerhaeuser will have its own transactional data on of its competitors – documents that will be available to Dr. Netz.[9]

---

[8]    Weyerhaeuser (Mem. at 32) cites *In re Methionine Antitrust Litigation*, 204 F.R.D. 161, 165 (N.D. Calif. 2001), but that case was brought as a indirect purchaser class under state antitrust law, under which pass-on is a defense.

[9]    *See* Weyerhaeuser Subpoena to Washington Alder (Exhibit 7 hereto), especially Document Request Nos. 5-6.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION – PAGE 28**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

There is also survey price data available that is relied upon by the industry. Netz Decl. ¶¶ 49-57. Dr. Rausser asserts that this is mere "survey data" which is less reliable than transaction data, and that the different public sources do not correlate with each other. However, this does not mean that *all* such sources are unreliable, but only that some are. Dr. Netz recognizes that it will be necessary to evaluate the reliability of the data; moreover, even Dr. Rausser acknowledges that such data can be reliable for purposes of determining price trends, Rausser Testimony (*Washington Alder*) at 124:9-10.

I.    **The Alleged "Conflicts" Identified By Dr. Rausser Are Illusory**

Dr. Rausser identifies two alleged intra-class conflicts in his Declaration. The weight that Weyerhaeuser attaches to these allegations is reflected by the fact that they are nowhere even alluded to in Weyerhaeuser's brief.

First, Dr. Rausser states that a distributor or broker, who resells lumber, will want to oppose injunctive relief because it benefits from Weyerhaeuser's high prices – because, if it uses a fixed markup on each unit and that markup is unaffected by the supplier's price, then a higher price from the supplier will result in a greater absolute (though not percentage) profit for the distributor.[10]

As set forth in Dr. Netz's appended declaration, there is no reasonable basis for a distributor to want to perpetuate Weyerhaeuser's monopoly and oppose injunctive relief. Just because Weyerhaeuser has a monopoly and can charge a monopoly price does not mean that any distributor

---

[10]    Under this view, even if an individual distributor brought its own injunctive action against a supplier, the distributor could be required to do a "pass on" damage study just to show that it had standing to seek injunctive relief. This is ironic, given that one of the biggest concerns underlying *Illinois Brick's* ban on indirect purchaser damage suits was to reduce the difficulty and complexity of damage analysis.431 U.S. at .731-32.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– PAGE 29

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

has monopoly power and can charge a monopoly or fixed markup.  To the contrary, distributors compete against each other for sales.  If Weyerhaeuser raises its prices and the distributor persists in applying "a fixed percentage mark-up," Rausser Decl. ¶ 26, then either (1) some other distributor will realize that, by accepting a lower mark-up, it can take sales away from its competitors, or (2) if no distributor figures this out, others will enter the market and become distributors.  Netz Supp. Decl. (appended as Ex. 2 hereto) ¶ 8.  Dr. Rausser himself acknowledged that no distributor could know with certainty that it would be able to maintain the same fixed mark-up in the future.  Rausser Dep. 105:6-13.

Moreover, if Weyerhaeuser continues to have a monopoly, no distributor could confidently predict that Weyerhaeuser will not price discriminate against it – charging it more for lumber than it charges other distributors.  In that case, the distributor may have to reduce its markup just to maintain its market position.  Dr. Rausser seeks to explain this away by arguing that such a customer could simply go to Weyerhaeuser and ask whether Weyerhaeuser was giving a better price to other customers, but it seems highly unlikely that Weyerhaeuser would voluntarily provide such information.

Dr. Rausser also claims that there is a conflict between purchasers buying high grades and purchasers buying low grades.  Rausser Decl. ¶ 27.  However, this is based entirely on his unsupported speculation that Dr. Netz will simply ignore possible demand differences among grades in her damage study.  To the contrary, Dr. Netz has testified that simply because there is a common formula does not mean that everybody has the same "but for" price; rather, such factors can be accounted for in a common damage formula.  Netz. Dep. at 68:25-69:17, 85:10-87:12.  Similarly,

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– PAGE 30**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

Dr. Rausser's brief assertion of a conflict based on the time-profile of purchases is based entirely on speculation that there could be benchmarks that favor one over the other. Rausser Decl. ¶ 28. In any event, the Ninth Circuit has made clear that alleged conflicts as to damages typically do not preclude class certification. *Blackie v. Barrack*, 524 F.2d at 909.

## CONCLUSION

For the reasons set forth above and in Plaintiff's original Memorandum, Plaintiff respectfully requests that its Motion for Class Certification be granted.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION – PAGE 31**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

November 12, 2004

KARNOPP PETERSEN LLP

William F. Buchanan
OSB No.93222
Josh Newton
OSB No.98308

Telephone: (541) 382-3011

Riverpointe One
1201 NW Wall Street
Suite 300
Bend, Oregon 97701-1957
Telecopy: (541) 388-5401
Web: www. karnopp.com
Email: wfb@karnopp.com

O"DONNELL & CLARK LLP

Mark. P. O'Donnell
OSB No. 68119

Telephone: (503) 306-0224

1706 NW Glisan Street
Suite 6
Portland, Oregon 97209

Telecopy: (503) 306-0257
Web: lawyers.com/odonnell& clark
Email: marko@oandc.com

Respectfully submitted,

BERRY & LEFTWICH


By: /s/_____

R. STEPHEN BERRY
D.C. Bar No. 234815
Telephone: (202) 296-3020
J. Daniel Leftwich
D.C. Bar No. 428134
Gregory Baruch
D.C. Bar No. 420137
1717 Pennsylvania Ave., NW Suite 450
Washington, DC 20006-1809
Telecopy: (202) 296-3038
Web: berry-leftwich.com

**Attorneys for Plaintiff
Morelock Industries, Inc.**

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– PAGE 32**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

## CERTIFICATE OF SERVICE

Gregory Baruch certifies that the foregoing was served via email on November 12, 2004 upon Defendant's counsel of record through the Court's electronic filing system.

/s/ _____
Gregory Baruch

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
– PAGE 33**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809