Stephen F. Crew, OSB No. 78171, stevec@rccb.com
Charles E. Corrigan, OSB No. 76108, chuckc@rccb.com
RAMIS, CREW, CORRIGAN & BACHRACH
1727 N.W. Hoyt Street
Portland, Oregon 97209
Telephone: (503) 222-4402
Telecopy: (503) 243-2944

R. Stephen Berry, D.C. Bar No. 234815, sberry@berry-leftwich.com
BERRY & LEFTWICH
1717 Penna. Ave. N.W. Suite 450
Washington, DC 20006-1809
Telephone: (202) 296-3020
Telecopy: (202) 296-3038
(Other Counsel Listed on Signature Page)
    Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **MORELOCK ENTERPRISES,** | Civil No. 3:04-cv-00583-PA |
| **Plaintiff,** | |
| | **PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA** |
| v. | |
| **WEYERHAEUSER CO.** | |
| **Defendant.** | |

PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND DATA – P. 1

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

**Certification**.  The parties have made a good faith effort to resolve this dispute through telephone and email conferences, but have been unable to do so.

**Question to be Decided**.  Whether an Order should be granted compelling Defendant to produce documents and data requested in Plaintiff's Fourth and Fifth Requests for Production, as described in the accompanying Memorandum.

For the reasons set forth in the accompanying Memorandum, Plaintiff respectfully moves the Court, under Federal Rules of Civil Procedure 37(a) and 34(b) for an Order compelling Defendant to produce the requested documents and data, in the format requested, within a specific period following the issuance of the Order.

**PLAINTIFF'S MOTION TO COMPEL**
**PRODUCTION OF DOCUMENTS AND DATA – P. 2**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

DATED: January 10, 2005

KARNOPP PETERSEN LLP

William F. Buchanan
OSB No.93222
Josh Newton
OSB No.98308

Riverpointe One
1201 NW Wall Street
Suite 300
Bend, Oregon 97701-1957
Telephone: (541) 382-3011
Telecopy: (541) 388-5401
Web: www. karnopp.com


O"DONNELL & CLARK LLP

Mark. P. O'Donnell
OSB No. 68119

1706 NW Glisan Street
Suite 6
Portland, Oregon 97209
Telephone: (503) 306-0224
Telecopy: (503) 306-0257
Web: lawyers.com/odonnell& clark

Respectfully Submitted,

BERRY & LEFTWICH

R. Stephen Berry
D.C. Bar No. 234815
J. Daniel Leftwich
D.C. Bar No. 428134
Gregory Baruch
D.C. Bar No. 420137

1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809
Telephone: (202) 296-3020
Telecopy:   (202) 296-3038
Web: www.berry-leftwich.com

**Attorneys for Plaintiff
Morelock Industries, Inc.
And The Class It Represents**

**PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND DATA – P. 3**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

## CERTIFICATE OF SERVICE

  R. Stephen Berry certifies that the foregoing was served via fax on January 10, 2005 upon Defendant's counsel of record, as well as via email through the Court's electronic filing system.

                /s/_____
                R. Stephen Berry

**PLAINTIFF'S MOTION TO COMPEL**
**PRODUCTION OF DOCUMENTS AND DATA – P. 4**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

Stephen F. Crew, OSB No. 78171, stevec@rccb.com
Charles E. Corrigan, OSB No. 76108, chuckc@rccb.com
RAMIS, CREW, CORRIGAN & BACHRACH
1727 N.W. Hoyt Street
Portland, Oregon 97209
Telephone: (503) 222-4402
Telecopy: (503) 243-2944

R. Stephen Berry, D.C. Bar No. 234815, sberry@berry-leftwich.com
BERRY & LEFTWICH
1717 Penna. Ave. N.W. Suite 450
Washington, DC 20006-1809
Telephone: (202) 296-3020
Telecopy: (202) 296-3038
(Other Counsel Listed on Signature Page)
    Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **MORELOCK ENTERPRISES, INC.** | Civil No. 3:04-CV-00583-PA |
| Plaintiff | |
| | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA** |
| v. | |
| **WEYERHAEUSER CO.** | |
| Defendant | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

# TABLE OF CONTENTS

                                                                                                                                 **Page**

INTRODUCTION .................................................................... 1

ARGUMENT ....................................................................... 2

A.      Requests For Production Relating To Data Sets Used By Gordon Rausser
         Or Charles River Associates To Support Weyerhaeuser's Defenses In
         *Washington Alder* ............................................................. 2

         1.      Weyerhaeuser Has Not Made Any Showing Of Undue Burden In
                 Responding To These Relevant Requests ............................. 4

B.      Requests For Production Relating To Softwood Pricing And Inventory
         Practices As A Comparison To Weyerhaeuser's Alder Pricing And
         Inventory Practices ........................................................... 10

         1.      These Discovery Requests Seek Highly Relevant Information To
                 Support Plaintiff's Benchmarking Analyses And To Rebut
                 Weyerhaeuser's Defenses .............................................. 11

CONCLUSION .................................................................... 13

**PLAINTIFF'S MEMORANDUM IN SUPPORT**                    Berry & Leftwich
**OF MOTION TO COMPEL PRODUCTION**                 1717 Penna. Ave., NW Suite 450
**OF DOCUMENTS AND DATA**                                   Washington, DC  20006-1809

## INTRODUCTION

Plaintiff served five sets of requests for production within the discovery period, seeking data and documents from Weyerhaeuser to prepare for trial. Only the fourth and fifth requests are the subject of this Motion. However, Weyerhaeuser responded to Plaintiff's specific requests for data by objecting to the production of the requested information in electronic form, and by producing documents only, in .TIFF-image format, which cannot be machine-read and sorted by Plaintiff's experts without manually inputting data from the documents.[1] In November, when Plaintiff's counsel complained about the failure to produce data in an acceptable format, and sent specific language (again) regarding the data format needed, Defendant gave assurances that all data would be produced in the format requested. *See* Leftwich Dec. Exs. A-D.[2] However, to date, Defendant has only produced limited data relating to Gordon Rausser's class certification report, and it has continued to produce documents containing requested data only in .TIFF format (when it has responded at all).

Last week, Plaintiff indicated its intention to seek relief from the Court concerning the failure to produce the data sought in an acceptable format, and Defendant promised again to meet that

---

[1] Tagged Image File Format (".TIFF") files are produced as images to protect the integrity of the documents in that format, so by definition, data contained in .TIFF images cannot be machine-read, sorted, and arranged in the manner in which Weyerhaeuser's experts can using the data in a different format, such as Microsoft Access, or comma delimited text file format.

[2] Declaration of J. Daniel Leftwich In Support Of Plaintiff's Motion To Compel Production of Documents And Data ("Leftwich Dec.").

**PLAINTIFF'S MEMORANDUM IN SUPPORT**  
**OF MOTION TO COMPEL PRODUCTION**  
**OF DOCUMENTS AND DATA - Page 1**

Berry & Leftwich  
1717 Penna. Ave., NW Suite 450  
Washington, DC 20006-1809

obligation, except for the unsupported objections that are the subject of this Motion.[3] Leftwich Dec. at ¶ 5, Ex. D.

## ARGUMENT

Plaintiff is entitled to present its case with the aid of the broad discovery afforded by the Federal Rules. Defendant has refused to produce documents and data, with no support for its objections, in response to legitimate requests that fall into the categories described below.

A. **Requests For Production Relating To Data Sets Used By Gordon Rausser Or Charles River Associates To Support Weyerhaeuser's Defenses In *Washington Alder***

The following Requests and Responses are taken verbatim from Weyerhaeuser's Responses to Plaintiff's Fourth Request For Production, received on December 20, 2004:

**Request For Production No. 1:**
In the electronic format(s) used by you, Dr. Rausser, or Charles River Associates, produce any working electronic database(s) used by Dr. Rausser to conduct any analysis in the Rausser Report,[4] including *without limitation* (1) the electronic database referred to at pages 41-43 (WEYMEI-R-OO4299 to 301) of the Rausser Report; and (2) the electronic database used to generate the log pricing results reported noted in the Rausser Report at pages 38-41 (WEYMEI-R-OO4296 to 298) and in Exhibit G of that report[5]. If you contend that such databases have already been produced in this action, specify the Bates ranges of such production and the CD upon which such ranges have been produced by you.

---

[3] It must be emphasized, however, that, despite this 11th hour agreement, Plaintiff has asked for firm dates for the promised data production and has not received them. Leftwich Dec. Ex. D. If Weyerhaeuser continues to delay in producing otherwise responsive data in an acceptable format, Plaintiff may find it necessary to seek additional relief from the Court in the near future.

[4] The "Rausser Report" is defined in the Fourth Request as the expert report or disclosure (including supplements) of Dr. Gordon Rausser in *Washington Alder LLC v. Weyerhaeuser Co.*, CV 03-753-PA.

[5] The relevant pages of the Rausser Report referencing these databases are included as Ex. E to the Leftwich Declaration.

| | |
|---|---|
| **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA - Page 2** | Berry & Leftwich<br>1717 Penna. Ave., NW Suite 450<br>Washington, DC 20006-1809 |

**Response To Request No. 1:**
  Weyerhaeuser objects to this request to the extent it requires the production of databases used by Weyerhaeuser, Dr. Rausser, or Charles River Associates in electronic format.
  Without waiving this objection, Weyerhaeuser responds as follows: Responsive materials have been produced to plaintiff in electronic and tif-image format at Bates Nos. WEYMEI-R-000001-007489.

**Request For Production No. 2:**
  To the extent you, Dr. Rausser, or Charles River Associates supplements any of the databases referred to in Request No. 1, produce the database(s) with supplements (not merely the supplements) in the same electronic format(s) specified in Request No. 1 on (a) February 1, 2005; (b) if supplemented thereafter, March 1, 2005; and (c) if supplemented thereafter, March 15, 2005.

**Response To Request No. 2:**
  Weyerhaeuser objects to this request to the extent it requires the production of databases used by Weyerhaeuser, Dr. Rausser, or Charles River Associates in electronic format.
  Without waiving this objection, Weyerhaeuser responds as follows: Weyerhaeuser has produced responsive data that has been supplemented to date, and will comply with the remainder of this request in the same manner as referenced in its response to Request for Production No. 1, above, should the referenced material be supplemented further.

**Request For Production No. 3:**
  Produce copies of any codes, manuals, or other data or documents necessary to allow Plaintiff's consultants to machine-read and manipulate the data referred to in Requests Nos. 1 and 2, written materials or information describing the nature of all data in such databases and the fields in which particular data can be found, and all indexes or designators sufficient to identify the sources of transaction recorded in such databases.

**Response To Request No. 3:**
  Consistent with its responses to prior requests for production, Weyerhaeuser has produced materials in electronic format and TIFF-image format. At plaintiff's request, Weyerhaeuser will continue to provide descriptions or definitions of any code or heading to enable plaintiff to identify the data being produced.

**Request For Production No. 4:**
  Produce on CD, and in an electronic format from which data was organized or extracted if any, all data inputted, or to be inputted, from any source into the databases referred to in Request Nos. 1 and 2. If you contend that such documents have already been produced in this action, specify the Bates ranges of the documents and the CD upon which such ranges have been produced. You are under continuing obligation to produce these data as they are updated or supplemented.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA - Page 3**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

**Response To Request No. 4:**
Weyerhaeuser directs plaintiff to its responses to requests 1 and 2 herein.

\* \* \* \* \*

1. **Weyerhaeuser Has Not Made Any Showing Of Undue Burden In Responding To These Relevant Requests**

First, Weyerhaeuser cannot credibly claim that data sets used by Dr. Rausser and/or Charles River Associates (CRA) in producing Rausser's report in *Washington Alder* are not relevant to this action – clearly they are. In *Washington Alder* and other past cases, Dr. Rausser has criticized plaintiffs' relevant market analyses based on price correlation studies using anything other than actual pricing sales records. Leftwich Ex. E at p.40 While that criticism will be shown to be unwarranted, Plaintiffs here are entitled to test the assertions made by Weyerhaeuser from any transaction data relied on by its experts. Fed. R. Evid. 705.

Rather, Plaintiff's request for this data has been met with two apparent objections: 1) Defendant states that it has already produced the underlying data given to Dr. Rausser in "tif-image format" (which, as described above, is not the format requested by Plaintiffs or the format ultimately relied upon by Dr. Rausser); and 2) Defendant argued in discussions with counsel that it paid for the production of the data sets selected by Rausser and/or CRA to produce the Rausser Report, and Plaintiffs cannot receive the benefit of that work without paying for it. The first argument should be resolved by Defendant's belated agreement to produce all responsive, and otherwise non-objectionable, data requested in a format that is consistent with how that data is available to Defendant's experts. The second argument has no merit. There is no legal basis for claiming recoupment of sunk costs in the production of readily accessible information created in prior cases.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA - Page 4**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

Under the liberal discovery principles of the Federal Rules, objectors are required to carry a heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 428 (9th Cir. 1975). The party who resists discovery also has the burden of clarifying, explaining, and supporting its objections. *Id.*; *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D.Cal.2002). Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all. *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir.1982) ("mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection"); *Thompson v. United States Dept. Of Housing and Urban Development*, 219 F.R.D. 93, 97-8 (D. Md. 2003) (conclusory or factually unsupported assertions by counsel that the discovery of electronic materials should be denied because of burden or expense can be expected to fail).[6]

It is not enough to wait for a motion to compel production to provide this particularized showing of extraordinary burden, the objections must include that showing. Otherwise, the requesting party is unfairly prejudiced by the delay and Defendant will have been given an unauthorized extension of the time for making such objections. This is a time-worn tactic to cause delay, that should not be permitted. *See Mcleod*, 894 F.2d at 1486 (delays from the flouting of discovery deadlines are "a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it . . . .").

---

[6] *See also Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (objections should be plain enough and specific enough so that the court can understand in what way the discovery requests are objectionable); *Mcleod, Alexander, Powel & Apffel, P.C., v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) ("We see no reason to distinguish the standards governing [conclusory] responses to interrogatories from those that govern responses to production requests")

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA - Page 5**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

Because of the possible burden and expense associated with broad discovery of electronic records, courts have acknowledged the need to employ the Rule 26(b)(2) cost-benefit balancing factors to determine just how much discovery of electronic records is appropriate in any given case, and which party should bear the cost associated with the production. *See.Thompson*, 219 F.R.D. at 97-8. In all but the most extraordinary cases, the presumption is that the producing party should bear the cost of responding to properly initiated discovery requests. *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 358 (1978) (the party responding to a discovery request ordinarily bears the expense associated with doing so); *Zubulake v. UBS Warburg LLC, et al.,* 217 F.R.D. 309, 318 (S.D.N.Y.2003) (hereinafter "*Zubulake I*") ("Any principled approach to electronic evidence must respect this presumption.").

In the context of discovery of electronic documents, "whether production of [such] documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format (a distinction that corresponds closely to the expense of production)." *Zubulake I,* 217 F.R.D. at 318; *see also OpenTV v. Liberate Technologies*, 219 F.R.D. 474, 476 (N.D. Cal. 2003). Shifting the cost of production from the producing party to the requesting party should be considered only when inaccessible data is sought. *See Zubulake v. UBS Warburg LLC, et al.,* 216 F.R.D. 280, 284 (S.D.N.Y.2003) (hereinafter "*Zubulake II*"). In *Zubulake I,* the court suggested that, "in the world of electronic data...any data that is retained in a machine readable format is typically accessible." *Zubulake I,* at 318.[7]

---

[7] *See also McPeek v. Ashcroft,* 202 F.R.D. 31, (D.D.C.2001) (court adopted a "marginal utility" analysis to determine which party was required to pay the cost of electronic discovery. The greater the likelihood that the source will produce information that is relevant to a claim or

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA - Page 6**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

In *Zubulake II*, the court crafted a seven-factor test (which has been followed widely) to determine which party should bear the production burden *if, and only if,* the data is found to be inaccessible:

1. The extent to which the request is specifically tailored to discover relevant information;
2. The availability of such information from other sources;
3. The total cost of production, compared to the amount in controversy;
4. The total cost of production, compared to the resources available to each party;
5. The relative ability of each party to control costs and its incentive to do so;
6. The importance of the issues at stake in the litigation; and
7. The relative benefits to the parties of obtaining the information.

*Zubulake II*, 216 F.R.D. at 284.

Even if the Court were to apply this test, it is clear that cost-shifting is not warranted: (1) these requests are narrowly tailored; (2) the databases are not readily available elsewhere; (3) the cost to Weyerhaeuser of copying these databases onto discs is minimal compared to the amount in controversy; (4) Weyerhaeuser's resources dwarf the Plaintiff's; (5) Weyerhaeuser controlled the cost of producing the databases in the prior litigation; (6) there are important issues involved; and (7) Plaintiff will benefit from production of the information, but Defendant is likely to use the information as well. Thus, nearly all of these factors favor upholding the presumption that the producing party bears the cost of production.

Moreover, "'[d]iscovery in antitrust litigation is most broadly permitted and the burden or cost of providing the information sought is less weighty a consideration than in other cases.'" *New*

---

defense, the fairer it is to require the producing party to bear the expense and *vice versa*). These requests are targeted to highly relevant data relied upon by Weyerhaeuser in defense of similar, if not identical issues as are presented here.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA - Page 7**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

*Park Entertainment L.L.C. v. Electric Factory Concerts, Inc.*, 2000 WL 62315 (E.D. Pa. Jan. 13, 2000) (quoting, *United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 186, 189 (S.D.N.Y.1974). Weyerhaeuser's only objection is to the production of these databases in electronic format, with no explanation of how or why such production of existing data would be burdensome.

Defendant's response to these requests pointed to the production of the nearly 7,500 .pages of documents, in .TIFF image format that were used, in part, to create the Rausser databases, apparently on the ground that Plaintiff should be required to recreate the databases by manually inputting data from those .TIFF documents. This burden shifting would constitute undue hardship to *Plaintiff*, given its need for the data and the inordinately wasteful expense that would be incurred in such an exercise. *See e.g. Washington Bancorporation v. Said*, 145 F.R.D. 274, 279-80 (D.D.C. Nov. 3, 1992) (production of four volume document index, created by outside counsel for FDIC at "enormous effort" and expense, summarizing 2400 boxes of documents ordered to be produced as the cost of recreating the index would create "undue hardship" to the requesting party). In *Washington Bancorporation*, the court stated: "It would, and undoubtedly did, take an enormous effort to create such a document. This court can see no reason to force defendants to repeat this effort when such a document already exists and can be disclosed without harm to its creator." *Id.* The same analysis should apply to these existing databases.

Only after an inquiry by Plaintiff's counsel into the basis for the objection was it revealed that Weyerhaeuser objects to production without payment of the sunk costs of creating the database in the *Washington Alder* litigation. However, regardless of the time and expense incurred when such databases were created by Dr. Rausser, or Charles River Associates, they were created for

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS AND DATA - Page 8**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

Weyerhaeuser's defense of claims brought by *other plaintiffs*. As such, the expense they apparently complain about has already been incurred – and not as a result of Plaintiff's request. Plaintiff has not asked Weyerhaeuser to create any data sets that do not already exist. Plaintiff merely asks for relevant information in the form available to Defendant, and not to be forced to duplicate such databases in a completely wasteful exercise.

The actual cost of producing these databases (which are clearly relevant to this action) should be minimal.[8] Moreover, Plaintiff would expect to pay for the cost of copying the data onto discs. So, the actual burden, if any, caused by Plaintiff's request should be very small.[9] The need for this data is clear, however, in order to effectively cross-examine Dr. Rausser and examine the accuracy of his analysis in prior litigation raising nearly identical allegations in several areas.

Presumably, the data sets are easily accessible to Weyerhaeuser in a format that can be produced to Plaintiff without elaborate restoration of archived data, as was the case was in *Zubulake*, *supra*. Even if it were inaccessible, Defendant has not met its burden of showing through particularized evidence how the balancing factors set forth in Rule 26(b)(2), as elaborated on in *Zubalake*, should favor *any* cost-shifting for this data production.

Defendant's cost-shifting argument, if accepted, would require Plaintiffs to pay for any expert analysis or testimony created in prior litigation (undoubtedly at great expense), including the sunk

---

[8] Plaintiff is not asking Weyerhaeuser to produce proprietary software to enable Plaintiff to machine-read and sort the data in the Rausser databases. It should be possible to produce the data in a commonly used format, which can then be read using Plaintiff's experts' own software.

[9] Indeed, Defendant has probably *increased* its actual cost of responding to Plaintiff's data requests by having documents containing such data (which may also exist in its databases) scanned into single-page .TIFF images for production.

| | |
|---|---|
| **PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA - Page 9** | Berry & Leftwich<br>1717 Penna. Ave., NW Suite 450<br>Washington, DC 20006-1809 |

costs of having Dr. Rausser create his expert reports and provide testimony in the *Siletz* and *Washington Alder* cases. In fact, it could make the same argument for recoupment of sunk costs in selecting and copying all of the *documents* it presented in *Washington Alder* and other prior cases. Defendant has offered no support for such cost-shifting under the Federal Rules. *See In re Brand Name Prescription Drug Litigation*, 1995 WL (the normal and reasonable translation of electronic data into a form usable by the discovering party should be the ordinary and foreseeable burden of a respondent in the absence of a showing of extraordinary hardship, *citing*, *Daewoo Electronics Co. v. United States,* 650 F.Supp. 1003, 1006 (Ct.Int'l Trade 1986)).

As a result, Weyerhaeuser should be compelled to produce the databases requested, including any updated data it provides to its experts, in a format that allows the data to be machine-read and sorted using Plaintiff's experts' own software.

**B.    Requests For Production Relating To Softwood Pricing And Inventory Practices As A Comparison To Weyerhaeuser's Alder Pricing And Inventory Practices**

The following Requests and Responses are taken verbatim from Weyerhaeuser's Responses to Plaintiff's Fifth Request for Production, received on January 4, 2005:

**Request For Production No. 7:**
From January 1, 1991 through the first quarter of 2004, the quantity of softwood harvested on private land in the Pacific Northwest, and state land in the Pacific Northwest.

**Request For Production No. 8:**
From January 1, 1991 through the first quarter of 2004, the price of softwood logs harvested in the Pacific Northwest, by species and grade.

**Request For Production No. 9:**
From January 1, 1991 through the first quarter of 2004, the inventory of softwood sawlogs at each Weyerhaeuser mill.

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF MOTION TO COMPEL PRODUCTION**
**OF DOCUMENTS AND DATA - Page 10**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

**Responses To Request Nos. 7-9 (all responses were identical):**
Weyerhaeuser objects to this request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

* * * * *

1. **These Discovery Requests Seek Highly Relevant Information To Support Plaintiff's Benchmarking Analyses And To Rebut Weyerhaeuser's Defenses**

Rule 26(b)(1) of the Federal Rules of Civil Procedure states, in part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The scope of discovery is extremely broad and encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Oppenheimer Fund,* 437 U.S. at 351; *Oregon Precision Industries, Inc., an Oregon Corporation, v. International Omni-pac Corporation,* 160 F.R.D. 592, 594 (D. Or. 1995). Because discovery is designed to define and clarify the issues, it is not limited to only those specific issues raised in the pleadings. *Miller v. Pancucci,* 141 F.R.D. 292, 296 (C.D.Cal.1992) (citing *Oppenheimer,* 437 U.S. at 351). Rather, the question of relevancy should be construed "liberally and with common sense" and discovery should be allowed unless the information sought has no conceivable bearing on the case. *Miller,* 141 F.R.D. at 296.

"Discovery in an antitrust case is necessarily broad because allegations involve improper business conduct. Such conduct is generally covert and must be gleaned from records, conduct, and business relationships." *Callahan v. A.E.V. Inc.,* 947 F.Supp. 175, 179 (W.D.Pa.1996)) (citations omitted); *see also New Park Entertainment, supra,* 2000 WL 62315 *3 (E.D. Pa. Jan. 13, 2000);

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA - Page 11**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809

*EGH, Inc. v. Blue Cross and Blue Shield of Oregon,* 1991 WL 198601, *1+ (D. Or. Sept. 26, 1991).

Again, Weyerhaeuser bears the burden of making a clear, particularized showing as to why the requested discovery is not within the extremely broad relevance standards of the Federal Rules. Its boilerplate, conclusory assertions are tantamount to no objection at all. *Mcleod*, 894 F.2d at 1485.

The information sought in these requests is relevant to rebut Weyerhaeuser's defenses that its pricing and inventory practices in the alder market are not indicators of monopoly power, as well as to support Plaintiff's benchmarking analyses which seek to use data from similar markets where Weyerhaeuser clearly does not have monopoly power. These are standard analytical approaches to antitrust issues, and Plaintiff should be given broad discovery to sort through alternatives and make its case on these issues. *See e.g., Nichols v. Smith-Kline Beechum Corp.*, 2003 WL 30252 *4 (E.D. Pa. Jan. 29, 2003) (a party and its experts should not be expected to have fully evaluated all data at the preliminary stage of class certification); *DeLoach v. Phillip Morris Companies, Inc.*, 206 F.R.D. 551, 565 (M.D. N.C. 2002) (selection among possible benchmark analyses in antitrust cases usually must be completed after merits discovery).

Plaintiff needs to have the freedom afforded by the Federal Rules to discover facts broadly and frame its proof, including benchmark damage proof, according to its theory of the case. Its consulting and testifying expert witnesses have identified this discovery as necessary to the task of framing the damage and liability proof. Plaintiff has not asked for every document in Defendant's files, it has targeted these requests to discover facts that are clearly within the scope of relevance set by the Federal Rules. Weyerhaeuser should be compelled to produce this information without further delay.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA - Page 12**

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC  20006-1809

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully moves the Court, under Federal Rules of Civil Procedure 37(a) and 34(b) for an Order compelling Defendant to produce the requested documents and data, in the format requested, within a specific period following the issuance of the Order.

January 10, 2005

KARNOPP PETERSEN LLP

William F. Buchanan
OSB No.93222
Josh Newton
OSB No.98308
Telephone: (541) 382-3011

Riverpointe One
1201 NW Wall Street
Suite 300
Bend, Oregon 97701-1957
Telecopy: (541) 388-5401
Web: www. karnopp.com
Email: wfb@karnopp.com

O"DONNELL & CLARK LLP
Mark. P. O'Donnell
OSB No. 68119
Telephone: (503) 306-0224

1706 NW Glisan Street
Suite 6
Portland, Oregon 97209

Telecopy: (503) 306-0257
Web: lawyers.com/odonnell& clark
Email: marko@oandc.com

Respectfully submitted,

BERRY & LEFTWICH

By: /s/_____

R. STEPHEN BERRY
D.C. Bar No. 234815
Telephone: (202) 296-3020

J. Daniel Leftwich
D.C. Bar No. 428134
Gregory Baruch
D.C. Bar No. 420137
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809
Telecopy:   (202) 296-3038
Web: berry-leftwich.com

**Attorneys for Plaintiff
Morelock Industries, Inc.
and the Class It Represents**

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS AND DATA - Page 13**

Berry & Leftwich
1717 Penna. NW Suite 450
Washington, DC 20006-1809

## CERTIFICATE OF CONFERENCE

The undersigned certifies that the parties have made a good faith effort to resolve this dispute through telephone and email conferences, but have been unable to do so.

/s/_____
J. Daniel Leftwich

## CERTIFICATE OF SERVICE

R. Stephen Berry certifies that the foregoing was served via email through the Court's electronic filing system and fax on January 10, 2005 upon Defendant's counsel of record.

/s/_____
R. Stephen Berry

PLAINTIFF'S MEMORANDUM IN SUPPORT
OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS AND DATA - Page 14

Berry & Leftwich
1717 Penna. Ave., NW Suite 450
Washington, DC 20006-1809