Stephen F. Crew, OSB No. 78171, stevec@oandc.com
O'DONNELL, CLARK & CREW LLP
Fremont Place, Suite 302
1650 NW Naito Parkway
Portland, Oregon 97209
Telephone: (503) 306-0224
Telecopy: (503) 306-0257

R. Stephen Berry, D.C. Bar No. 234815, sberry@berry-baruch.com
BERRY & BARUCH
1717 Pennsylvania Ave. NW, Suite 450
Washington, DC 20006-1809
Telephone: (202) 296-3020
Telecopy: (202) 296-3038
(Other Counsel Listed on Signature Page of Accompanying Motions)
    Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MORELOCK ENTERPRISES,

    **Plaintiff,**

                                      **Civil No. 3:04-cv-00583-PA**

WEYERHAEUSER CO.

    **Defendant.**

## MEMORANDUM IN SUPPORT OF CLASS'S MOTION FOR FINAL APPROVAL OF SETTLEMENT

Plaintiff Morelock Enterprises ("Plaintiff" or "Morelock"), on behalf of the Class, has moved this Court under Fed. R. Civ. P. 23(e) for final approval of the proposed settlement of this action with defendant Weyerhaeuser. This Court granted preliminary approval to the settlement on May 20, 2009.

**MEMORANDUM IN SUPPORT OF MOTION FOR**      Berry & Baruch
**FINAL APPROVAL OF SETTLEMENT - Page 1**      1717 Pennsylvania Ave., NW Suite 450
                                                                                 Washington, DC 20006-1809

The proposed settlement will provide a common fund of nearly $20 million in monetary compensation (to be precise, $19,750,000), which constitutes more than 70% of the Class's damages as found by the jury. The Settlement Agreement is appended to Morelock's Motion for Preliminary Approval (May 13, 2009) as Exhibit 1.

Morelock believes that this recovery puts this settlement in the top tier of antitrust settlements nationwide. Accordingly, Morelock respectfully requests that the Court grant final approval to the proposed settlement.

## THE PROPOSED SETTLEMENT

The proposed settlement provides a common fund of $19,750,000 in monetary compensation. Thus, the common fund amounts to more than 70% of the actual damages found by the jury. In return, the judgment is vacated, the case is dismissed with prejudice, and Weyerhaeuser obtains a release from the Class members as set forth in the Settlement Agreement.

### A.   Standards for Final Approval

Pursuant to Federal Rule of Civil Procedure 23, court approval is necessary for "any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." Fed. R. Civ. P. 23(e)(1)(A). Final approval of a class action settlement requires the district court to determine whether "the settlement is fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(1)(C).

In the Ninth Circuit, "[a]ssessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings;

the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004), and *cf. Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (district court needs to consider "some or all" of these factors). A "district court's final determination to approve the settlement should be reversed only upon a strong showing that the district court's decision was a clear abuse of discretion." *Hanlon*, 150 F.3d at 1027 (internal quotation marks and citation omitted); *accord, Rodriguez*, 563 F.3d at 963-64 (overturn only for "clear abuse of discretion"), quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).

### B. The Settlement Is Fair, Reasonable, And Adequate

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (same). Indeed, courts should grant approval "unless the settlement is clearly inadequate." *National Rural Telecommunications Cooperative v DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Calif. 2004).

Looking at each of the *Hanlon* factors, Plaintiff submits that this settlement – reached in extended arm's-length negotiations by experienced counsel – is clearly deserving of approval.

### (1) Strength of the Plaintiffs' Case

As there has already been a jury verdict in the Class's favor, it is reasonable to conclude that this case has strength. That is not to say, however, that there is not significant risk both in post-

verdict motions and on appeal. This case involves complex issues of antitrust law, including several that have not been previously addressed by the Ninth Circuit or the Supreme Court and some as to which the Court requested further briefing at the December 2, 2008 hearing on post-trial motions. 12/2/08 Hearing Transcript at 23:19-22, 24:11-13, 24:24, 26:19-20. Moreover, Plaintiff believes that the strength of the case is adequately reflected in the amount of the settlement – more than 70% of actual damages.

(2)     **Risk, Expense, Complexity, and Likely Duration of Further Litigation**

"An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Linerboard Antitrust Litigation*, 296 F.Supp.2d 568, 577 (E.D.Pa.2003), quoting *In re Motorsports Merchandise Antitrust Litigation*, 112 F. Supp.2d 1329, 1337 (N.D. Ga. 2000); *accord, Rodriguez v. West Publishing Corp.*, 2007 Westlaw 2827379, *8 (C.D. Calif. Sept. 10, 2007), *reversed in part on other grounds*, 563 F.3d 948 (9th Cir. 2009).

In this case, Weyerhaeuser has filed lengthy and substantial motions for judgment and for a new trial on which the Court has not yet ruled. As noted above, at the most recent hearing, the Court specifically requested further briefing on some of the issues raised in the post-trial motions. If the Court ruled in Weyerhaeuser's favor on even a single issue, the entire trial verdict could be overturned.

For example, in its post-trial motions for judgment and new trial, Weyerhaeuser has raised the following issues:

• Whether Plaintiff was required to prove a separate alder sawlog market, and, if so, whether

**MEMORANDUM IN SUPPORT OF MOTION FOR**         Berry & Baruch
**FINAL APPROVAL OF SETTLEMENT - Page 4**        1717 Pennsylvania Ave., NW Suite 450
                                                  Washington, DC 20006-1809

they failed to do so or to show that Weyerhaeuser had monopoly power in that market;

- Whether Plaintiff was required to show substantial foreclosure throughout the damage period, and whether they did so;

- What level of foreclosure qualifies as substantial, and whether Plaintiff satisfied this standard;

- Whether Plaintiff adequately showed that the foreclosure was the result of exclusionary conduct;

- Whether the jury could properly find that finished alder lumber was a relevant product market;

- Whether Plaintiff was required to prove a particular geographic market;

- Whether the jury could properly find that there were barriers to entry;

- Whether the jury could properly have used a common overcharge formula for different grades of alder lumber;

- Whether the Court erred in allowing evidence of conduct in the bidding market;

- Whether the Court had erred in its instructions on bidding and buying conduct, levels of foreclosure, or the amount of market share needed to support a showing of monopolization.

The list above does not include other issues Weyerhaeuser raised before or during trial (such as its motions *in limine*, motions for decertification of the Class, and *Daubert* objections to expert testimony), which it could also assert in an appeal.

Even assuming that the Court ruled uniformly in the Class's favor, Weyerhaeuser would inevitably take an appeal, the resolution of which could take several years in light of the Ninth

**MEMORANDUM IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF SETTLEMENT - Page 5**

Berry & Baruch
1717 Pennsylvania Ave., NW Suite 450
Washington, DC 20006-1809

Circuit's congested docket. "The history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998). In numerous instances jury verdicts have been overturned by the trial court, the Court of Appeals, or even the Supreme Court. *See, e.g., MCI Communications Corp. v. American Telephone & Telegraph Co.*, 708 F.2d 1081, 1166-69 (7th Cir.) ($1.8 billion antitrust judgment was remanded for a new trial and the second trial produced a dramatically smaller award); *Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 276-308 (2d Cir. 1979) (multimillion dollar judgment after a lengthy trial was reversed); *Telex Corp. v. International Business Machines Corp.*, 510 F.2d 894, 933 (10th Cir. 1975) (per curiam) (reversing a $259.5 million judgment for plaintiff and awarding an $18.5 million counterclaim judgment for defendant); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478, 479, 485 (S.D.N.Y. 1970), *aff'd*, 449 F.2d 51 (2d Cir., 1971), *rev'd*, 409 U.S. 363, 366 (1973) ($145 million judgment was overturned, after years of litigation and appeals). In the related case *Ross-Simmons Co. v. Weyerhaeuser Co.*, the plaintiff won a jury trial and post-verdict motions in the district court, won a unanimous affirmance in the Ninth Circuit, yet still saw the entire judgment overturned by the Supreme Court, four years after the verdict. *See Weyerhaeuser Corp. v. Ross-Simmons Hardwood Lumber Co.*, 127 S.Ct. 1069 (2007).

As in those cases, Class Plaintiff's failure to prevail on any one issue on appeal could result in no recovery whatever for Class members. As stated by one court:

> [T]he court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "it has been held proper to take the bird in the hand instead of a prospective flock in the bush."

**MEMORANDUM IN SUPPORT OF MOTION FOR**
**FINAL APPROVAL OF SETTLEMENT - Page 6**

Berry & Baruch
1717 Pennsylvania Ave., NW Suite 450
Washington, DC 20006-1809

*Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974), *quoting West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743 (S.D.N.Y. 1970). Application of these standards to the proposed settlement in this case demonstrates that the settlement should be approved.

**(3)   Risk of Maintaining Class Action Status Throughout Trial**

In this case, class status has been maintained through trial. However, it is likely that Weyerhaeuser – which made several motions for decertification – would seek to overturn class certification on appeal. Therefore, there remains some risk in maintaining the case as a class action through the appeal.

**(4)   Amount Offered in Settlement**

In evaluating an antitrust class action settlement's monetary component, courts routinely compare the settlement recovery to the present value of the estimated single damages a plaintiff would likely recover if successful. For example, the Ninth Circuit has stated:

> courts do not traditionally factor treble damages into the calculus for determining a reasonable settlement value. ... [C]ourts generally determine fairness of an antitrust class action settlement based on how it compensates the class for past injuries, without giving much, if any, consideration to treble damages.

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009), *affirming in pertinent part* 2007 WL 2827379, *11 (C.D. Calif. 2007).[1]

---

[1]   *See also Detroit v. Grinnell Corp.*, 495 F.2d 448, 458 (2d Cir. 1974); *In re Remeron Direct Purchaser Antitrust Litigation*, 2005 WL 3008808, *9 (D.N.J., Nov. 9, 2005); *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 257-58 (D. Del. 2002); *In re Lorazepam & Clorazepate Antitrust Litigation*, 205 F.R.D. 369, 377 n.12 (D.D.C. 2002); *In re Domestic Air Transportation Antitrust Litigation*, 148 F.R.D. 297, 319 n.25 (N.D. Ga. 1993); *Fisher Bros. v. Phelps Dodge Industries*, 604 F. Supp. 446, 451 (E.D. Pa. 1985); *In re Art Materials Antitrust Litigation*, 100 F.R.D. 367, 372 (N.D. Ohio 1983); *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 9 (N.D. Ohio 1982); *In re Ampicillin Antitrust Litigation*, 82 F.R.D. 652, 654 (D.D.C.

Here, the proposed settlement provides more than 70% of the single damages found by the jury. This is so far above the typical antitrust settlement that the result clearly favors approval. *Cf. In re Remeron End-Payor Antitrust Litigation*, 2005 WL 2230314, *24 (D.N.J. Sept. 13, 2005) (noting settlement for one-third of damages is "quite a substantial recovery"). Courts routinely grant approval to settlements that involve recoveries of a mere fraction of actual damages. *See, e.g., In re Apple Computer, Inc. Derivative Litigation*, 2008 Westlaw 4820784, *2 (N.D. Calif. Nov. 5, 2008) (median security class settlements in 2006 and 2007 were 2.4% of actual damages); *In re Portal Software, Inc. Securities Litigation*, 2007 Westlaw 4171201, *3 (N.D. Calif. Nov. 26, 2007) (median securities class settlements were 3.1% of actual damages in 2005 and 2.4% in 2006); *In re Ravisent Technologies, Inc. Securities Litig.*, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) (6-12% of potential recovery generally reasonable); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp.2d 290, 339 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) (noting cases approving settlements for 0.2 to 16% of potential recovery). *Cf. City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery").

Importantly, the entire settlement amount is cash, not certificates, coupons, or product discounts – a fact that the Ninth Circuit views as significant. *See Rodriguez*, 563 F.3d at 965 (settlement "is in cash, not in kind, which is a good indicator of a beneficial settlement"). This case will therefore provide class members with actual cash benefit on a timely basis, rather than requiring them to wait through a lengthy appeal process for a recovery that could be overturned.

---

1979).

**MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT - Page 8**

Berry & Baruch
1717 Pennsylvania Ave., NW Suite 450
Washington, DC 20006-1809

**(5) Extent of Discovery Completed and Stage of Proceedings**

This case was only settled during post-trial. The parties herefore knew the strengths and weaknesses of the case based on an actual trial. All of the pertinent liability and damage issues have been fully analyzed by the Plaintiffs' counsel and experts. The parties also had the benefit of several lengthy settlement negotiations, at which each side's potential strengths and weaknesses were presented and evaluated. This discovery and analysis afforded the parties and their counsel a sound basis for assessing the risks of continued litigation versus the proposed settlement, and their judgment is entitled to great weight in considering whether to approve the settlement. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 640 (holding that "[a] presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery").

**(6) Experience and Views of Counsel**

Great weight is given to the recommendation of counsel. *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Calif. 2005). The Court is aware of the qualifications of Class Counsel in terms of antitrust and class action experience, having approved their appointment as Class Counsel. *See* Opinion and Order Certifying a Class (Dec. 16, 2004) at 13 (granting class certification and approving class counsel). There is ample basis, therefore, to expect that counsel have the necessary experience to evaluate the risks and benefits of continued litigation for their clients.

Here, the parties engaged in negotiations at several stages of the litigation, including extensive sessions with a highly regarded mediator, Randall Wulff (and earlier ones with another

highly regarded mediator, the Honorable Edward Leavy). The negotiations were aided by the trial record, including extensive trial testimony by expert witnesses. This settlement is the product of knowledgeable analysis by counsel, with capable assistance by professional mediators.

**(7)    Presence of Governmental Participant**

This factor is inapplicable, as there is no governmental participant.

**(8)    Reaction of Class Members to Proposed Settlement**

The deadline for class members to file objections to the settlement is June 29, 2009 (as of yet, Plaintiff is aware of no such objections having been filed). Accordingly, Plaintiff will address this factor in their submission after that deadline has passed.

Plaintiff submits that weighing the above factors clearly favor a grant of final approval.

**C.    Fairness of the Proposed Distribution Plan**

Class Plaintiff proposes that the common fund (net of Court-awarded fees and expenses) be divided among the Class based upon each Class member's share of the Class's damages calculated by the jury for each year of the damage period. In other words, because the jury awarded widely differing damages per year, the common fund would first be allocated to particular years, and then divided between Class members purchasing within a given year based on each Class member's share of the total Class purchases in that year. In that way, if a Class member purchased mainly in high-damage years, that Class member would receive a larger share than if it had purchased mainly in low-damage years.

For example, purchases in the year 2006 accounted for 24.32% of the damages awarded by the jury. Plaintiff therefore proposes that 24.32% of the net common fund be allocated to purchases

in the year 2006. A Class Member that purchased in 2006 would therefore receive a share of that amount (24.32% of the net common fund) which would represent that Class Member's percentage of all Class Members' purchases from Weyerhaeuser in 2006, as well as a similarly-calculated share of damages for other years.

Class Plaintiff submits that this is not only the fairest method but is the only feasible one and the only one that would not open up the settlement to potential charges that some members of the Class have been unduly favored over others. The jury granted widely different damages for different years of the damage period. Unless the distribution of damages is proportional to the jury's award, a class member who purchased predominantly in later years (when damages were higher) would have a basis to complain of unfair treatment unless the distribution took account of the jury's different awards. It should be noted that there can be no claim that this distribution plan unduly favors the Class Representative, because Morelock Enterprises predominantly purchased during the *earlier* years, when the proportion of damages was lower.

It is also important to note that there is *no* reversion of unclaimed Class funds to the defendant – all funds, after Court-approved fees, expenses, and a possible class representative incentive award are deducted, will be paid to Class members.

### D. Distribution Plan – Treatment Of Unlocatable Class Members

Some class notices have been returned as "undeliverable." In those cases, when the Post Office includes a forwarding address in returning the notice, Class Counsel have remailed the notice to that address. When the Post Office does not include a forwarding address, Class Counsel have inquired of Weyerhaeuser whether they have any more recent address. When Weyerhaeuser has a

more recent address in their files, Class Counsel have re-mailed the notice to that address.

Some notices, however, will be returned without any forwarding address being readily obtainable. In those cases, Plaintiff proposes that, for claims exceeding $100, the Settlement Administrator conduct an Internet search to obtain a valid address. When the Settlement Administrator is unable to obtain a valid address, or when the claim is less than $100, Plaintiff proposes that the damage amounts allocated to that class member be reallocated to other class members. If the invalidity of a class member's address, and the Settlement Administrator's inability to obtain a valid address, become known only after damage checks have been distributed, so that any reallocation would require issuance of new checks to class members, Plaintiff proposes that the reallocation be made only to those class members whose new checks would be in amounts of $100 or more.

### E.    The Proposed Vacation Of The Judgment Is Reasonable And Necessary To The Settlement

The parties have jointly moved the Court to vacate the verdict and judgment as part of its order granting final approval. For the reasons set forth in the Memorandum in support of that motion, Plaintiff believes that this request is fully justified under *Bates v. Union Oil Co. of California*, 944 F.2d 647, 650 (9th Cir. 1991) and *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir. 1982). Moreover, under the Settlement Agreement, the Court's approval of vacating the judgment is necessary for the settlement to go forward.

### E.    Fairness Of The Notice Plan

Pursuant to the Court's Order Granting Preliminary Approval, the Court's approved Notice was sent by first-class prepaid mail to all class members on May 29, 2009. *See* Declaration of Anita

**MEMORANDUM IN SUPPORT OF MOTION FOR**  
**FINAL APPROVAL OF SETTLEMENT - Page 12**

Berry & Baruch  
1717 Pennsylvania Ave., NW Suite 450  
Washington, DC 20006-1809

Woehler (May 29, 2009). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citation and internal quotation marks omitted).

The Supreme Court has held that individual notice by first-class mail is the best notice practicable in class actions. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 176 (1974). However, due process does not require actual notice, but rather a good faith effort to provide it. *In re Prudential Insurance Co. of America Sales Practice Litigation*, 177 F.R.D. 216, 231-32 (D.N.J. 1997). The Supreme Court has stated that sending "a fully descriptive notice" by "first-class mail to each class member ... satisfies due process." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985). Accordingly, Plaintiff submits that the notice provided to class members fully met the requirements of Rule 23 and due process.

### F.   Proposed Settlement Administrator

Plaintiff proposes that Epiq Systems be appointed the Settlement Administrator. Epiq Systems has previously been appointed the Settlement Administrator in another settlement in which Class Counsel Berry & Leftwich (predecessor to Berry & Baruch) was involved, *Bradburn Parent/Teacher Store v. 3M*, in the U.S. District Court for the Eastern District of Pennsylvania. Epiq Systems has extensive experience in class settlements, and information about their qualifications was previously submitted with Plaintiff's Motion for Preliminary Approval.

### G.   Reservation of Funds For Payment Of Settlement Administrator

Plaintiff respectfully requests that the Court authorize that $60,000 may be reserved from the

fund for payment of the Settlement Administrator, and that it authorize Class Counsel to authorize that the Settlement Administrator be paid as its fees and expenses are incurred. To the extent that the full $60,000 is not used, Plaintiff requests authorization to distribute the remainder to class members on a pro rata basis, except that to save on the costs of such distribution it should only be made to those class members whose new distribution (when combined with any reallocation of amounts described in Section D above) would be in amounts of $100 or more.

## CONCLUSION

For all the foregoing reasons, Class Plaintiff respectfully requests that the Court grant final approval to this settlement.

Dated: June 15, 2009

KARNOPP PETERSEN LLP
William F. Buchanan
OSB No.93222
Josh Newton
OSB No.98308
Telephone: (541) 382-3011

Riverpointe One
1201 NW Wall Street
Suite 300
Bend, Oregon 97701-1957
Telecopy: (541) 388-5401
Web: www. karnopp.com
Email: wfb@karnopp.com

O"DONNELL, CLARK & CREW LLP
Stephen F. Crew
OSB No. 78171
Mark. P. O'Donnell
OSB No. 68119
Telephone: (503) 306-0224

Fremont Place, Suite 302
1650 NW Naito Parkway
Portland, Oregon 97209
Telecopy: (503) 306-0257
Email: stevec@oandc.com
         marko@oandc.com

Respectfully submitted,

BERRY & BARUCH

By: /s/ _____

R. STEPHEN BERRY
D.C. Bar No. 234815
Telephone: (202) 296-3020

Gregory Baruch
D.C. Bar No. 420137
J. Daniel Leftwich
D.C. Bar No. 428134
1717 Pennsylvania Ave., NW, Suite 450
Washington, DC 20006-1809
Telecopy: (202) 296-3038
Email: sberry@berry-baruch.com
         gbaruch@berry-baruch.com
         dleftwich.law@gmail.com

**Attorneys for Plaintiff
Morelock Industries, Inc.
and the Class**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served via email on Defendants' counsel of record through the Court's electronic filing system.

/s/ _____
Gregory Baruch

**MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT - Page 16**

Berry & Baruch
1717 Pennsylvania Ave., NW Suite 450
Washington, DC 20006-1809